645 A.2d 290

The COURIERS–SUSQUEHANNA, INC., Appellant,

v.

COUNTY OF DAUPHIN, Harrisburg School District, and Dauphin County Board of Assessment Appeals.

Commonwealth Court of Pennsylvania.

Argued April 14, 1994.

Decided June 20, 1994.

---

194

Allen C. Warshaw, for appellant.

Carl G. Wass, for appellee.

Before COLINS and NEWMAN, JJ., and KELTON, Senior Judge.

NEWMAN, Judge.

The Couriers–Susquehanna, Inc. (Couriers) appeal from an order of the Court of Common Pleas of Dauphin County (trial court) which affirmed the decision of the Dauphin County Board of Assessment Appeals (Board) denying the Couriers' request for a real estate tax exemption. For the reasons that follow, we vacate the order of the trial court and remand the matter for further proceedings.

The Couriers is a non-profit corporation which was formerly known as the Great Commission Evangelistic Association. On July 9, 1991, the Couriers purchased the Susquehanna Nursing Facility (facility) from a limited partnership known as the Susquehanna Center for Nursing and Rehabilitation. The Susquehanna Center had operated the facility as a profit-

making entity. Therefore, the property on which the facility is located had been subject to real estate taxation.

The facility in question is a 180–bed long term/skilled care facility which provides various levels of nursing and medical services to elderly individuals who are unable to care for themselves. Most often, the facility's patients are referred by local hospitals when they are no longer in need of in-patient treatment but require continuing medical and nursing care. The facility screens applicants based upon medical need and bed availability. The applicants are not screened based upon their ability to pay the full cost of their care. It is also important to note that approximately seventy-five percent (75%) of the facility's patient revenues are derived from some kind of government funding.[1]

On July 24, 1991, the Couriers requested the Board to determine that the property owned by the Couriers, and utilized for the purpose of operating the facility, was exempt from taxation on the ground that the facility was a charity. On November 4, 1991, the Board denied the request without providing the Couriers an explanation of their reasoning. The Couriers appealed to the trial court which held a *de novo* hearing. On July 9, 1993, the trial court issued an order affirming the decision of the Board denying the Couriers' request for tax exemption.

On appeal to this court the following issues are presented: (1) whether the Couriers satisfy all of the criteria of a purely public charity thereby entitling the real estate upon which the facility is located to be declared exempt from taxation; and (2) whether the Couriers' property is entitled to be declared exempt from local real estate taxation because other similarly situated Dauphin County facilities have previously been determined to be exempt.[2]

1. Patient revenues for the facility can be summarized as follows:

| Medicare | 9 to 10% |
| Medicaid | 60 to 62% |
| Private Pay | 25 to 26% |
| Veteran's Admin. | 2 to 3% |

2. The trial court's decision as to whether a facility is entitled to an exemption is binding absent an abuse of discretion or lack of support-

Under Article VIII, Section 2(a)(v) of the Pennsylvania Constitution, the General Assembly is empowered to confer tax-exempt status to "institutions of purely public charity." Pa. Const. art. VIII, § 2(a)(v). In *Hospital Utilization Project v. Commonwealth of Pennsylvania*, 507 Pa. 1, 487 A.2d 1306 (1985), the supreme court concluded that an entity qualifies as a purely public charity if it:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*Id.* at 22, 487 A.2d at 1317.

█ The entity claiming to be a purely public charity has the burden of proving that its operation satisfies all five of these criteria for tax exemption purposes. *In re Appeal of Bethlen Home of the Hungarian Reformed Federation of America*, 125 Pa.Commonwealth Ct. 315, 557 A.2d 828 (1989).

█ Once an entity seeking tax exemption is able to establish that it is a purely public charity within the meaning of Article VIII of the Pennsylvania Constitution, it must next establish that it meets the statutory requirements of Section 204(a)(3) of the General County Assessment Law (Law).[3] *Associated YM–YWHA of Greater New York/Camp Poyntelle v. County of Wayne*, 149 Pa.Commonwealth Ct. 349, 613 A.2d 125 (1992). Section 204(a)(3) of the Law confers a real estate tax exemption on:

[a]ll hospitals, universities, colleges, seminaries, associations and institutions of learning, benevolence, or charity, . . .

ing evidence. *Associated YM–YWHA of Greater New York/Camp Poyntelle v. County of Wayne*, 149 Pa.Commonwealth Ct. 349, 613 A.2d 125 (1992).

3. Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204(a)(3).

founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose. . . .

72 P.S. § 5020–204(a)(3). This provision exempting property as a charitable institution is subject to strict construction. *In re Appeal of Newtown School District v. The Devereux Foundation*, 39 Pa.Commonwealth Ct. 326, 395 A.2d 1023 (1978).

### I. Purely Public Charity

#### A. Advances a Charitable Purpose

■ With respect to the first prong of the *Hospital Utilization Project* test, the trial court found that the Couriers advance a charitable purpose because the facility provides services to the elderly without regard to their ability to pay, and because the facility does not expect to generate a profit in the foreseeable future. At the hearing before the trial court, testimony established that the facility has an open admissions policy. Under this policy, the Couriers admit patients to the facility based solely on bed availability and the patient's medical needs; a patient's ability to pay the full cost of the care provided is not taken into consideration. Testimony also established that the Couriers do not intend or expect to make a profit from the facility in the foreseeable future. Based upon these factors, we agree with the trial court that the Couriers advance a charitable purpose.

#### B. Donates a Substantial Portion of its Services

■ With respect to the second prong of the test, the trial court concluded that the facility does not donate or render gratuitously a substantial portion of its services. Specifically, the trial court determined that the facility made a conscious business decision to accept whatever amount Medicaid pays for services rendered and recoups those losses by charging other patients inflated prices. Based upon the recent decision of the Pennsylvania Supreme Court in *St. Margaret Seneca*

*Place v. Board of Property Assessment, Appeals and Review, County of Allegheny,* 536 Pa. 478, 640 A.2d 380 (1994), we disagree with the trial court's conclusion as to this factor.

In *St. Margaret's,* a case closely related to the present action, the supreme court held that the requirement that a particular institution donate or render gratuitously a substantial portion of its services "does not imply a requirement that the institution forgo available government payments which cover part of its costs, or that it provide wholly gratuitous services to some of its residents." 536 Pa. at 485, 640 A.2d at 384. With respect to the specific facts of *St. Margaret's,* the supreme court approved the trial court's finding that Seneca Place gratuitously rendered a substantial portion of its services by providing for the forty-eight percent of its residents whose health care costs are only partially paid by Medicaid. *Id.*

In the current action, the Couriers assert that the losses the facility has suffered since it began operation are directly attributable to a conscious decision by the Couriers and the facility to accept residents without regard to their ability to pay the full cost of the services provided to them. The Couriers further assert that it does not admit Medicaid patients as a business decision but rather does so because its mission is to provide services to those elderly who need them and who would be unable to receive the services in another place.

In addition, as previously noted in this opinion, approximately sixty percent of the facility's residents are Medicaid patients for which government payments do not fully cover the cost of care. Thus, in accordance with the supreme court's decision in *St. Margaret's,* we conclude that the Couriers render gratuitously a substantial portion of its services.

C.  *Benefits a Substantial and Indefinite Class of Persons Who are Legitimate Subjects of Charity*

The Couriers argue and the Board concedes that the Couriers' facility benefits a substantial and indefinite class of persons who are legitimate subjects of charity. Accordingly, the

third prong of the *Hospital Utilization Project* test is satisfied.

### D. *Relieves the Government of Some of its Burden*

■ With respect to the fourth prong of the test, the trial court noted that it was confronted with a facility which derives approximately seventy-five percent of its income from government benefits. Therefore, the trial court concluded that it was constrained to find that the Couriers did not relieve the government of its burden. Again, based upon the supreme court's recent decision in *St. Margaret*, this is no longer the case.

In *St. Margaret*, the supreme court held that a finding that an institution has fully funded the care of some people who would otherwise be fully funded by the government is not a requirement. The test to be employed is merely whether an institution bears a substantial burden that would otherwise fall to the government. *Id.* With respect to the specific facts of that case, the court determined that Seneca Place, a home that paid a substantial portion of the cost for Medicaid patients, who comprised about one half of its residents, fulfilled the requirement that the home relieve the government of some of its burden. *Id.*

Similarly, in the current action, the Couriers pay a portion of the cost for Medicaid patients who comprise approximately sixty percent of the facility's residents. Accordingly, the Couriers satisfy the requirement that the facility relieve the government of some of its burden.

### E. *Operates Entirely Free from Private Profit Motive*

■ With respect to the fifth and final prong of the *Hospital Utilization Project* test, the trial court found that the Couriers did not satisfy its burden of proving that the facility operates free from a private profit motive. In support of its position that the trial court's finding was in error, the Couriers claim that it is non-profit and note that the facility has sustained heavy losses since operation began. The Couriers further note that according to its bylaws, no profit from the facility's operation may inure to the benefit of any individual.

Our review of the record reveals that for the fiscal year ending June 30, 1992, the facility had a deficit of approximately $390,000. The projected loss for 1993 is approximately $82,000. Thus, there can be no doubt that the facility's financial position is rapidly improving.

More importantly, we question the Couriers' contention that no private profit shall inure to the benefit of any individual. As noted by the supreme court in *St. Margaret*, excessive salaries and fringe benefits to corporate officers may evidence a private profit motive. With respect to the facts of this case, we note that the Board of Directors, the "founding fathers" of the Couriers, each receive $27,000 annually to serve as a director of the facility and as compensation for the services they provide, namely, the singing of gospel music and ministerial visitation with residents. We further note that the Couriers failed to introduce any evidence which would tend to establish how much time the directors actually spent at the facility.[4] Moreover, when questioned at oral argument, counsel for the Couriers was unable to inform the court what duties these directors performed or how much time each one spent at the facility in exchange for their compensation. Underscoring the fact that the Couriers were unable to establish how much time the directors actually devote to the facility, we note that the facility retains a professional management consultant who is paid $60,000.

Based upon the record compiled below, we are unable to conduct meaningful appellate review to determine whether the Couriers and its directors operate the facility entirely free from private profit motive.

Accordingly, we vacate the order of the trial court and remand the matter for further proceedings on this issue.

## II. Similarly Situated Facilities

■ With respect to the second issue, the Couriers assert that Dauphin County is treating the Couriers' facility differently than other similarly situated nursing homes. Specifical-

---

4. The record does reveal that these individuals perform gospel music throughout the United States as well as in foreign countries.

ly, the Couriers assert that the County is trying to collect real estate taxes from its facility while making no effort to collect from other non-profit nursing homes which operate in essentially the same manner as the Couriers.

In tax exemption cases, the facts are of critical importance because prior decisions based on then current information and facts have limited value as precedent. *School District of the City of Erie v. Hamot Medical Center*, 144 Pa.Commonwealth Ct. 668, 602 A.2d 407 (1992). The concept of "charity" is constantly changing and is based upon variable factors such as time, place and purpose. *Id.* Moreover, whether a specific institution is entitled to a real estate tax exemption is a determination which must be made based upon the institution's own unique factual composition. *Id.* Accordingly, the tax status of other nursing home facilities in Dauphin County for which we have no factual foundation is not relevant to the present action.

In addition, a taxpayer complaining that administration of a tax violates its right to be taxed uniformly with others in its class must demonstrate deliberate and purposeful discrimination in the application of the tax in order to prevail. *Commonwealth of Pennsylvania v. Molycorp, Inc.*, 481 Pa. 208, 392 A.2d 321 (1978). Our review of the record imparts that the Couriers failed to introduce evidence sufficient to support such a conclusion. Therefore, we must reject the Couriers' claim that it is being discriminated against by Dauphin County.

### *III. Conclusion*

Having determined that the Couriers failed to establish that it was being deliberately and purposefully discriminated against by Dauphin County, we affirm the decision of the trial court with respect to that issue. However, having determined that the Couriers failed to introduce evidence sufficient for this court to conduct meaningful appellate review of whether the facility operates entirely free from private profit motive, we vacate the order of the trial court and remand the matter for further consideration of that issue.

## *ORDER*

AND NOW, June 20, 1994, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is vacated and the matter remanded for further proceedings.

Jurisdiction relinquished.