MT. MACRINA MANOR, INC.

v.

FAYETTE COUNTY BOARD OF
ASSESSMENT APPEALS,
Appellant.

Commonwealth Court of Pennsylvania.

Argued May 14, 1996.
Decided Oct. 7, 1996.

**936**

Robert L. Webster, Jr., Uniontown, for Appellant.

Arthur J. Schwab, Pittsburgh, for Appellee.

Before DOYLE and SMITH, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

This is an appeal by the Fayette County Board of Assessment Appeals from an order of the Court of Common Pleas of Fayette County which exempted Mt. Macrina Manor, Inc. (Mt. Macrina), as a purely public charity, from real estate property taxes under Section 202(a)(3) of The Fourth to Eighth Class County Assessment Law (Law), Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. § 5453.202(a)(3).

### FACTUAL HISTORY

The factual background has three subparts: the history of Mt. Macrina and its corporate structure; the charitable services and financial situation of Mt. Macrina; and the procedural history of this litigation.

### The History and Corporate Structure of Mt. Macrina

Mt. Macrina is a Catholic, non-profit, long-term care nursing home facility which provides specialized and multi-level care to adults whose average age is eighty-eight years old. Mt. Macrina is owned and operated by the Sisters of the Order of St. Basil the Great, which began providing nursing care in 1971. Mt. Macrina is located on the Motherhouse grounds of the Order in North Union Township and consists of 5.0006 acres. Mt. Macrina was incorporated as a non-profit corporation, has no profit-sharing plan, remits no dividend payments, and has a voluntary Board of Directors, which consists entirely of the Sisters of St. Basil the Great.

Mt. Macrina employs approximately 125 employees, including four Sisters, and approximately ten Sisters who perform non-paid volunteer work. The employees are compensated at wages equal to or less than comparable employees of nonprofit nursing homes. Since 1993, the day-to-day management of the nursing home has been provided by Senior Housing Services, Inc., which is an affiliated non-profit religious entity.

### Charitable Services and Finances of Mt. Macrina

Mt. Macrina does not discriminate on the basis of religion, race, sex, ethnic origin, creed or disability, nor on the basis of ability to pay; Mt. Macrina does not prematurely discharge patients due to an inability to pay for services. Mt. Macrina provides various community services, such as semi-annual blood drives, health screenings and bereavement counseling. It also provides certified nursing assistance training in coordination with several government or non-profit agencies in Fayette County.

Approximately sixty-nine percent (69%) of Mt. Macrina's patients are Medicaid or Medicare eligible patients; fifty-one percent (51%) "are Medicaid patients for which Mt. Macrina bears a minimum of ten percent of the costs" and eighteen percent (18%) are Medicare patients "for which [Mt. Macrina] bears a minimum of two percent of the costs for a period of one hundred days, after which such patients lose their Medicare benefits." (Trial Court Opinion at 4; Finding of Fact (F.F.) No. 11.) Approximately two percent of the patients receive assistance from the Veterans Administration. The remaining patients are covered by private insurance companies or personal funds. Therefore, Mt. Macrina subsidizes approximately sixty-nine percent of its patient population.

To finance the construction of Mt. Macrina, the Sisters of St. Basil the Great provided an interest free loan of one million dollars ($1,000,000.00) which was to be repaid by Mt. Macrina if funds were available at a rate of

$5,000 per month. Mt. Macrina maintains a cash and cash-equivalent reserve of $577,-000.00 "in order to operate the facility for forty-five days in the event that all of its non-profit funding were to cease." (Trial Court Opinion at 6; F.F. No. 19.) The reserve consists of fees charged in excess of costs provided by private payments, not Medicare or Medicaid revenue, or donations.

### Procedural History

From 1971 through 1988, Mt. Macrina was deemed to be a purely public charity and was exempt from real estate taxes under Section 202(a)(3) of the Law. In 1988, Fayette County withdrew Macrina's real estate tax exemption; Mt. Macrina did not contest this change and paid the real estate taxes until 1994. However, in August of 1994, Mt. Macrina filed an appeal with the Fayette County Board of Assessment Appeals seeking an exemption from real estate taxes on the basis that it was a purely public charity. On October 31, 1994, a hearing was held before the Board, during which the Board denied Mt. Macrina's request for an exemption for the years beginning with tax year 1995. On November 30, 1994, Mt. Macrina filed an appeal to the Court of Common Pleas of Fayette County, which held that Mt. Macrina was a purely public charity, and, therefore, exempt from real estate taxes.

The Board now appeals to this Court, arguing that Mt. Macrina fails to meet the definition of a purely public charity. Specifically, the Board asserts that Mt. Macrina has failed to prove that it advances a charitable purpose, donates gratuitously a substantial portion of its services, relieves the government of some of its burden, and as is required by Section 202 of the Law, prove that it is an institution founded, endowed, and maintained by public charity.

### DISCUSSION

Article 8, Section 2 of the Pennsylvania Constitution gives the General Assembly the power to exempt institutions of purely public charity from taxation. Based upon that authority, the General Assembly enacted Section 202 of the Law which allows counties to confer a real estate tax exemption on institutions of "purely public charity."

In order to qualify as a public charity under the Pennsylvania Constitution, our Supreme Court in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985) (hereinafter *HUP*), identified five factors which must be considered in determining whether a particular organization qualifies. The five requisites which the entity must satisfy are that it:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free of the profit motive.

*Id.* at 22, 487 A.2d at 1317. The taxpayer bears the burden of proving that it satisfies all five criteria of the *HUP* test to be entitled to the exemption. *Associated YM–YWHA of Greater New York/Camp Poyntelle v. County of Wayne*, 149 Pa.Cmwlth. 349, 613 A.2d 125 (1992).

Moreover, Section 202(a)(3) of the Law provides the following standard for tax exempt real property:

(a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit:

. . . .

(3) All hospitals, universities, colleges, seminaries, academic associations and institutions of learning, benevolence or charity, ... **founded, endowed, and maintained by public or private charity:** Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose: ...

Here, the Board concedes that Mt. Macrina has established its qualifications under the third and fifth prong of the *HUP* test; thus,

the issues of whether Mt. Macrina benefits a substantial and indefinite class of persons who are legitimate subjects of charity, and whether it operates free from a profit motive, will not be discussed.

### A. Advances a Charitable Purpose

■ The Board first contends that Mt. Macrina does not advance a charitable purpose because it does not operate at a loss. Specifically, the Board argues that, because Mt. Macrina's revenues were in excess of its expenses for the years 1994 and 1995, it achieved a "profit" or a pecuniary gain.

It is well established that accepting Medicaid or Medicare payments is not the "equivalent of conducting a business for profit. The decision to accept Medicaid [or Medicare] payments to help defray the cost of care for residents is perfectly consistent with a finding that the nursing home advances a charitable purpose." *St. Margaret Seneca Place v. Board of Property Assessment, Appeals and Review,* 536 Pa. 478, 483, 640 A.2d 380, 382–83 (1994); *see Couriers–Susquehanna, Inc. v. County of Dauphin,* 165 Pa.Cmwlth. 192, 645 A.2d 290 (1994)(holding that Couriers, a nonprofit nursing home, was held to advance a charitable purpose because it provided care in a nondiscriminatory manner, without regard for ability to pay, and did not expect to make a profit).

In *West Allegheny Hospital v. Board of Assessment, Appeals and Review of Allegheny County,* 500 Pa. 236, 455 A.2d 1170 (1982), the Supreme Court stated that if a non-profit health facility has revenues from patient billings in excess of its costs, such revenues do not prevent the entity from being deemed a purely public charity if such revenues are used to support the institution, increase the efficiency of the facilities, or repair or increase the grounds of the facility. *See* Section 202(a)(3) of the Law (All hospitals, and institutions of benelovence and charity are exempt from all taxes "[p]rovided, That the entire revenue derived by the same be applied to the **support and to increase the**

efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose....") (Emphasis added.)

In the instant case, the trial court found that the nursing home advances a charitable purpose in providing long term health care for low income patients in a non-discriminatory manner regardless of their ability to pay. The trial court also found that Mt. Macrina admits patients solely on the basis of availability of beds and the medical needs of the patient.

In regard to Mt. Macrina's financial status, the trial court held that approximately sixty-nine percent of Mt. Macrina's patients are dependent upon Medicare or Medicaid, which only pays a portion of the patient's costs, leaving Mt. Macrina to bear the difference. The court further found that Mt. Macrina retains a surplus of $577,000.00, which is held in reserve in order to operate the facility for forty-five days in the event that all of its non-profit funding were to cease.[1] Moreover, the corporate structure of Mt. Macrina was that of a non-profit organization, having no paid Board of Directors, no profit sharing, nor any distribution of dividends.

Accordingly, based upon these factors, we agree with the trial court that Mt. Macrina advances a charitable purpose. Like, *Couriers–Susquehanna, Inc.,* Mt. Macrina does not discriminate in admitting patients, nor does it refuse patients who are unable to pay for the services. Also, the surplus emergency fund of $577,145.00 is not a "profit"; thus, such excess revenue does not bar Mt. Macrina from meeting the first prong of the *HUP* test. "A surplus revenue is not synonymous with private profit, provided it is used as required by the statute." *St. Margaret,* 536 Pa. at 488, 640 A.2d at 385.

### B. Donates a Substantial Portion of its Services

■ The Board's second argument is that Mt. Macrina does not donate or render gratuitously a substantial portion of its services.

---

1. Monica Seese, the Director of Finance for Mt. Macrina testified that if an excess in revenues above costs exists, the excess is used for capital improvements, and if any funds remain after-wards, such money is held in reserve to insure the continuation of operations, if other funding ceases. (Deposition of Seese at 96; Reproduced Record (R.R.) at 145a.)

The Board asserts that Mt. Macrina merely bears two percent of the costs of its Medicare population (17%) and bears only ten percent of the costs of its Medicaid population (45%), which together equals a total loss of $199,-000.00 for the 1995 fiscal year. Comparing that unreimbursed amount to Mt. Macrina's revenue of $4,599.166.00 for the fiscal year ending June of 1995, (Mt. Macrina Statement of Revenues & Expenses; R.R. at 291a), the Board argued that the amount of money Mt. Macrina donates gratuitously is not substantial and does not meet the second prong of the *HUP* test. We do not agree since the Board erred in comparing the total revenue of the institution to the total amount of unreimbursed costs.

The Board misconstrues the law. First, the Board asserts that, because only $199,-000.00 is unreimbursed costs and total revenue equals $4,599.166.00 for fiscal year ending June of 1995,[2] a substantial portion of the services are not donated. The total revenue of Mt. Macrina not only includes private fees paid, but Medicaid and Medicare payments as well. Obviously, because the revenue exceeds the amount of unreimbursed Medicare and Medicaid patient costs, the prices charged to private patients make up the shortfall.[3] In *Couriers–Susquehanna, Inc.,* this Court specifically rejected the contention that, because an institution charges non-Medicaid/Medicare patients higher prices to recoup the losses incurred from providing care to Medicaid and Medicare patients, a substantial portion of its services are not donated. Thus, merely because Mt. Macrina is not operating at a loss for the year, that is, because its revenues exceed the amount of unreimbursed costs, does not prevent Mt. Macrina from meeting the second prong of the *HUP* test.

In *HUP,* the Supreme Court noted that:

Whether or not the portion donated or rendered gratuitous is 'substantial' is a determination to be made based on the totality of circumstances surrounding the organization. The word 'substantial' does not imply a magical percentage. It must appear from the facts that the organization makes a bona fide effort to service primarily those who cannot afford the usual fee.

*HUP,* 507 Pa. at 19 n. 9, 487 A.2d at 1315 n. 9. Cases subsequent to the decision in *HUP* further delineated in what circumstances an institution is considered to have met the donative requirement of *HUP.*

In *St. Margaret,* forty-eight percent of its residents were partially funded by Medicaid. In addition, many of its residents whose costs were remitted by Medicare or private insurance companies would exhaust their coverage and rely on Medicaid coverage, which only pays a portion of the recipient's costs. The Pennsylvania Supreme Court, in holding that St. Margaret Seneca Place donated or rendered gratuitously a substantial portion of its services, stated that "[t]he requirement that an institution donate or render gratuitously a substantial portion of its services does not imply a requirement that the institution forgo available government payments which cover *part* of its costs, or that it provide wholly gratuitous services to some of its residents." *St. Margaret,* 536 Pa. at 486, 640 A.2d at 384 (emphasis in original).

Likewise, in *Couriers–Susquehanna, Inc.,* this Court held that where an institution admits patients regardless of ability to pay, and where approximately sixty percent of its patients are Medicaid patients whose costs of care are only partially covered by Medicaid, it meets the second prong of the *HUP* test. *See also Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A.2d 776 (1968)(even though many of the residents of the nursing home paid in full for the services and eighty percent of the operational costs were paid by the residents, because no profit was made, and if a profit were to be realized such would not benefit an individual, such institution was found to be a purely public charity).

Mt. Macrina does not discriminate on the basis of ability to pay, nor does it terminate treatment of patients who are unable to pay.

---

**2.** The excess of revenues over expenses in the fiscal year ending June of 1995 was $380,893.00. (Mt. Macrina's Statement of Revenues & Expenses; R.R. at 291a.)

**3.** We note that Mt. Macrina's total revenue did not exceed its total expenses in 1991 or 1993.

Sixty-nine percent of all of Mt. Macrina's patients are Medicaid or Medicare patients who after one hundred days lose their Medicare benefits and must rely thereafter on Medicaid benefits. Although Mt. Macrina only bears a two-percent cost for Medicare patients, and a ten-percent cost for Medicaid patients, this Court finds that, because sixty-nine percent of its total population is subsidized by Mt. Macrina, a substantial number of its residents' services are therefore rendered gratuitously. Moreover, the mission of this institution is donative in nature; the purpose of Mt. Macrina is to care for patients regardless of ability to pay.

### C. Relieves the Government of Some of its Burden

■ The Board's third argument is that Mt. Macrina does not relieve the government of some of its burden because there is no constitutional, statutory, or decisional law to support the notion that any government must provide nursing home care to the public. The Board is correct in its statement that no explicit constitutional right to nursing care exists under federal or state law; however, statutory and decisional law does exist which supports the concept that the government bears the burden of providing nursing home care to those persons who cannot afford it.

In 1965, Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395ccc (Medicare) and Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396u (Medicaid).[4] Medicare is a health program which furnishes medical care to persons over the age of sixty-five. *Legion v. Richardson*, 354 F.Supp. 456 (S.D.N.Y.1973), *aff'd Legion v. Weinberger*, 414 U.S. 1058, 94 S.Ct. 564, 38 L.Ed.2d 465 (1973). Medicaid is a federal program which is designed to share the costs with the states in providing medical care for all those persons eligible, regardless of age, who are in need of financial assistance.[5] *Id.*

Medicaid ... is designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services. The federal government shares the costs of Medicaid with States that elect to participate in the program....

States participating in the Medicaid program must provide coverage to the 'categorically needy.' 42 U.S.C. § 1396a(a)(10)(A)....

A participating state also may elect to provide medical benefits to the 'medically needy'....

*Atkins v. Rivera*, 477 U.S. 154, 156–57, 106 S.Ct. 2456, 2458–59, 91 L.Ed.2d 131 (1986). Participation by states is voluntary. *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990).

Although participation in the Medicaid or Medicare programs is voluntary, where such participation of a state occurs, certain constitutional rights attach. *See Klein v. Califano*, 586 F.2d 250 (3d. Cir.1978) (procedural due process rights attach where a legally generated expectation of continued receipt of government benefits, Medicaid funding, exists). By analogy, the Commonwealth of Pennsylvania has voluntarily participated in these *federal funding programs*, which have the purpose of providing medical assistance to those persons who are financially unable; thus, through such participation Pennsylvania has voluntarily assumed the burden of assisting those persons who meet the Medicaid and Medicare eligibility requirements.

Additionally, through common law, the Commonwealth has accepted the burden of providing nursing home care. In *Presbyterian Homes*, 428 Pa. at 152, 236 A.2d at 779, the Supreme Court stated:

[I]t is a matter of wide common knowledge in which we gladly participate that the public or general welfare policy of Pennsyl-

---

**4.** Title XVIII was added to the Social Security Act by the Act of July 30, 1965, Pub.L. 89–97, § 102(a); Title XIX was added by the Act of July 30, 1965, Pub.L. 89–97, § 121(a).

**5.** 42 U.S.C. § 1396 states in part:

For the purpose of enabling each States, as far as practicable under the conditions in such State, to furnish (1) medical assistance on be-

half of families with dependent children and of aged, blind or disabled individuals whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence....

vania has been increasingly broadened to include greater and greater concern and care for the aged and the sick and the infirm, and consequently the words 'charity' and 'public charity' must be given a liberal interpretation.

More recently, in *St. Margaret*, the Supreme Court stated that "the public will fund the patient's care at a public institution ... [which] is deemed to be a public responsibility. The aged in need of medical care are legitimate objects of charity.... The partial subsidy of the costs of caring for an elderly patient is unquestionably a charitable act." *Id.* at 485, 640 A.2d at 383–84.

The Court further held that a finding that an institution has fully funded the care of some people who would otherwise be fully funded by the government is not a requirement for a conclusion that the government is relieved of some of its burden. The test to be employed is merely whether an institution bears a substantial burden that would otherwise fall to the government. *Id.* (The court determined that, because since the institution paid a substantial portion of the cost for Medicaid patients, who comprised about one half of its residents, the home fulfilled the requirement that it relieve the government of some of its burden).

Mt. Macrina subsidizes nursing care and medical services to those who are unable to afford proper care and are therefore the natural recipients of public charity, which service our Commonwealth considers a governmental responsibility. Accordingly, Mt. Macrina relieves the government of some of its burden, thus, meeting the fourth prong of the *HUP* test.

### D. An Institution Founded, Endowed and Maintained by Charity

■ The Board's next argument is that Mt. Macrina failed to demonstrate that it is an institution founded, endowed, and maintained by public charity pursuant to Section

202(a)(3) of the Law [6] because the Sisters of St. Basil funded the construction of the nursing home with a one million dollar interest-free loan, which is being repaid by Mt. Macrina.

In *West Allegheny*, approximately $565,-000.00 of a total cost of $590,000.00 for one of the hospital facilities, and $3 million of the $4.3 million total cost of a second facility was financed, with the remaining costs funded by charitable contributions. In holding that facilities were funded by charity, the Supreme Court recognized that "necessary capital acquisitions need not be financed completely through charitable endowments." *Id.* at 236, 240, 455 A.2d at 1172 (1982). The Court also stated:

Any other reading of [the Law [7]] would yield unreasonable results. [C]onstruction costs for a facility frequently involved several millions of dollars.... One would have to be removed from modern-day realities to believe that such costs are easily subsidized, even in part; and yet if such costs were not the proper subject of the application of funds derived from beneficiaries of the institution, the language endowed ... by public or private charity,' if not qualified by the proviso, would require subsidization in full.

*Id.* at 241 n. 4, 455 A.2d at 1172 n. 4.

■ In this case, the Sisters of St. Basil provided Mt. Macrina with an interest-free loan of one million dollars. The loan was to be repaid at a rate of $5,000.00 per month if Mt. Macrina were financially able.[8] As in *West Allegheny*, this Court finds that Mt. Macrina was funded by charity because a purely public charity does not need to be financed solely by charitable contributions.

The Board also argues that, because Mt. Macrina's total revenue for the fiscal year ending in June of 1995 was approximately $4.6 million and the amount of charitable donations for the same time period was a

---

6. 72 P.S. § 5453.202(a)(3).

7. The Court was specifically referring to Section 204(a)(3) of the County General Assessment Law, 72 P.S. § 5020–204(a)(3), which it comparable to Section 202(a)(3) of the Law, 72 P.S. § 5453.202(a)(3).

8. Sister Ruth Plant testified that Mt. Macrina did not pay the $5,000 a month for a period of fifteen months during which time the nursing home was unable to financially afford the repayment. (Plant's Deposition at 25–26; R.R. at 74a–75a.)

mere $43,000.00, Mt. Macrina is not maintained by public charity. The Board, in making this argument, misinterprets Section 202(a)(3) of the Law.

In *West Allegheny*, the Court found that because all revenues from the patient billings were utilized to support the daily operations of the facility and not as profits, the institution was supported and maintained as a public charity. Also, the Court stated that a public charity need not be fully maintained by charitable contributions to be deemed to be maintained by charity. Similarly, in *St. Margaret*, the Court held that, because fifty-nine percent of its patients are Medicare and Medicaid recipients, and any surplus of funds achieved by the institution, was used to maintain and operate the facility, such institution was a purely public charity.

As the Supreme Court concluded in *West Allegheny* and in *St. Margaret*, we conclude that Mt. Macrina is maintained by public charity. Mt. Macrina's operations are partially funded by charity and any surplus in total revenues which it receives is used to operate the facility, or placed into the surplus fund, which is maintained to permit the nursing home to continue operating if other funding ceases.[9]

Accordingly, the order of the Court of Common Pleas of Fayette County is affirmed.

### ORDER

NOW, October 7, 1996, the order of the Court of Common Pleas of Fayette County in the above-captioned matter is hereby affirmed.

---

9. The Board also argues is Mt. Macrina's request for an exemption should be denied because the real estate taxes are fully reimbursable from the federal government, citing *G.D.L. Plaza Corp.v. Council Rock School District*, 515 Pa. 54, 526 A.2d 1173 (1987). In *G.D.L. Plaza*, the **entire cost of the housing project** was paid either by the residents or the federal government. In this case, it has been established that a portion of the costs of maintaining the facility is based upon charitable contributions; thus, *G.D.L. Plaza* is not dispositive to the case at bar. Additionally, there is nothing in Article 8, Section 2(a) of the Pennsylvania Constitution or Section 202 of the Law that requires that for an institution to be considered a purely public charity, the entire real estate tax liability must be born by the charity, and not subsidized by the federal government.