**LEWISTOWN HOSPITAL**

v.

**MIFFLIN COUNTY BOARD OF ASSESSMENT APPEALS**

v.

**COUNTY OF MIFFLIN, Mifflin County School District, Derry Township.**

**Appeal of MIFFLIN COUNTY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 1997.
Decided Jan. 26, 1998.
Reargument Denied March 12, 1998.

Kenneth D. Chestek, Erie, for appellant, Mifflin County.

Daniel M. Mulholland, III, for appellee, Lewistown Hospital.

Jeffrey L. Snook, Lewistown, for appellee, Mifflin County School District.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue in this case is whether the hospital qualified as a "purely public charity," in order to be eligible for tax-exempt status for its real estate.

County of Mifflin (County) appeals from the order of the Court of Common Pleas of Mifflin County that reversed the revocation by the Mifflin County Board of Assessment Appeals (Board), of Lewistown Hospital's (Lewistown Hospital or Hospital) tax-exempt status.[1] We affirm.

In 1905, a group of citizens incorporated Lewistown Hospital as a Pennsylvania non-profit, non-stock corporation organized and operated for the purpose of conducting charitable, scientific, and educational activities. Since that time the Hospital has been exempt from the payment of real estate taxes. A sixteen-member board of trustees governs the Hospital. These individuals are residents of the Hospital's service area and never receive compensation for their services or reimbursement for expenses incurred in the performance of their duties.

In the mid–1980s, a Pennsylvania non-profit corporation known as Lewistown Health Care Foundation (Foundation) was formed as the "parent" company for the Hospital. Its purpose is to raise funds and administer those funds for the benefit of the Hospital. The Foundation owns three subsidiaries in addition to the Hospital: Lewistown Ambulatory Care (LAC), organized as a non-profit organization whose business is the ownership and rental of a medical office building; Health Enterprises, Inc., a for-profit entity that operates several retail pharmacies; and Family Health Associates, a non-profit corporation which operates primary care centers.

The Hospital made an initial transfer of $1 million to the Foundation. Since that time, there has been no direct transfer of money from the Hospital to the Foundation or from the Hospital to any of the Foundation's subsidiaries. Prior to 1987, the Hospital forgave debt owed to it by the Foundation on one occasion. The Hospital normally realizes a profit and participates in the federal Medicare and state Medicaid programs. The Hospital participates in several county programs providing services to the community. However, the Board determined that the Hospital, the Foundation and LAC no longer qualified for real estate tax exemptions as they did not meet the qualifications of a "purely public charity."

■ The Hospital appealed to the trial court.[2] The trial court conducted a non-jury trial to determine the tax-exempt status of the parcels owned by the Hospital. The trial

---

1. The Mifflin County School District and Derby Township, which are three Taxing Authorities with jurisdiction to tax property located in Derby Township, (collectively, Taxing Authorities) intervened.

2. The original appeal to the trial court included nine parcels owned by the Foundation and five parcels owned by LAC, in addition to the eight parcels owned by the Hospital. Before the hearing, LAC and the Foundation withdrew the appeal as to the parcels owned by them.

court determined that the Hospital did qualify under the constitutional and statutory tests for tax-exemption from the payment of real estate taxes and ordered the Board to reinstate the Hospital's tax-exempt status.

█ On appeal to this Court,[3] the County argues that the trial court erred in concluding that the Hospital was entitled to a real estate tax-exemption.[4] The County asserts that the Hospital neither satisfied the constitutional requirements of "purely public charity" as interpreted in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985) (*HUP*), nor the statutory requirements set forth in the General County Assessment Law (Assessment Law), Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020-1–5020-602. Further, the County argues that the trial court's interpretation of *Sacred Heart Healthcare System v. Commonwealth*, 673 A.2d 1021 (Pa.Cmwlth.1996), improperly limited its examination of the Hospital's parent, LHF and its other subsidiaries. For the reasons set forth below, we hold that the trial court properly determined that the Hospital was entitled to tax-exempt status for its real estate holdings.

Under Article VIII, Section 2(a)(v) of the Pennsylvania Constitution, the General Assembly is empowered to confer tax exempt status to "institutions of purely public charity." Pa. Const. art. VIII, § 2(a)(v). In *HUP*, the Supreme Court stated that in order to qualify as a purely public charity, the entity seeking tax exemption must prove that it:

1) Advances a charitable purpose;

2) Donates or renders gratuitously a substantial portion of its services;

3) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

4) Relieves the government of some of its burden; and

5) Operates entirely free from profit motive.

*HUP*, 507 Pa. at 21–22, 487 A.2d at 1317.

Once the entity has established the five elements set forth in *HUP*, it must also establish that it meets the statutory requirement of Section 204(a)(3) of the Assessment Law, 72 P.S. § 5020-204(a)(3).

The County asserts that the Hospital has failed to meet all the requirements for a public charity set forth in *HUP*, as well as the statutory requirements in the Assessment Law. We will address these arguments seriatim.

First, the County argues that the Hospital does not advance a charitable purpose, the first prong of the *HUP* requirements. In *HUP*, the Supreme Court stated that in order to be found to have a "charitable purpose," the entity had to satisfy the following definition:

The word 'charitable,' in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood 'to refer to something done or given for the benefit of our fellows or the public.' *Taylor v. Hoag*, 273 Pa. 194, 196, 116 A. 826 [1922].

*HUP*, 507 Pa. at 18, 487 A.2d at 1315 (citations omitted). In *HUP*, the Supreme Court concluded that while HUP's purpose to improve health care services was commendable, it did not qualify as charitable in the legal sense, because the direct beneficiaries were the fee-paying clients and not the general public.

█ The County argues that Lewistown Hospital renders health care services for a fee and thus, should not qualify for tax-

---

**3.** Our scope of review in a real estate tax assessment appeal is limited to determining whether the trial court's findings are supported by substantial evidence or whether the trial court abused its discretion or committed an error of law. *Pennsylvania Easter Seal Society Appeal*, 67 Pa.Cmwlth. 94, 445 A.2d 1369 (1982). The question of whether an entity is entitled to the exemption is a mixed question of law and fact, which absent an abuse of discretion or lack of substantial evidence, we will not disturb. *Appeal of Bucks County Board of Assessment Appeals*, 55 Pa.Cmwlth. 195, 423 A.2d 760 (1980).

**4.** The School District was also deemed an appellee; however, it has filed a brief in support of the position of the County before this Court.

exempt status. The County claims the Hospital does not meet the definition of "charitable," as its direct beneficiaries are its fee-paying clients and not the general public. The trial court did not agree, on the basis that the Hospital consistently adheres to and maintains an open admissions policy providing care to all without regard to their ability to pay and on a nondiscriminatory basis.

The fact that the Hospital accepts payment from those who can pay, to help defray costs, does not undermine the reality that the Hospital advances a charitable purpose. In *St. Margaret Seneca Place v. Board of Property Assessment Appeals and Review*, 536 Pa. 478, 640 A.2d 380 (1994), the Supreme Court held that treating elderly and indigent patients in return for reimbursement that is less than the cost of providing those services is sufficient to prove the charitable nature of such institutions.

Further, in *West Allegheny Hospital v. Board of Property Assessment, Appeals and Review of Allegheny*, 500 Pa. 236, 455 A.2d 1170 (1982), the Court focused on that hospital's open admission and nondiscrimination policies as conclusive evidence that the hospital advanced a charitable purpose. Therefore, based on the Supreme Court's holdings in *St. Margaret* and *West Allegheny*, we hold that the trial court correctly found the Hospital advanced a charitable purpose.

The County next challenges the trial court's finding that the Hospital donates or renders gratuitously a substantial portion of its services, the second requirement of *HUP*. In describing this part of the test, the Supreme Court said:

> Whether or not the portion donated or rendered gratuitous is 'substantial' is a determination to be made based on the totality of circumstances surrounding the organization. The word 'substantial' does not imply a magical percentage. It must appear from the facts that the organization makes a bona fide effort to service primarily those who cannot afford the usual fee.

*HUP*, 507 Pa. at 19, n. 9, 487 A.2d at 1315, n. 9.

 The County asserts that the Hospital does not donate or render a portion of its services gratuitously. First, it claims that the services provided to Hill–Burton Program[5] patients are not charitable but are a "pre-paid" service, as the Hospital received benefits from the federal government in return for treating these patients. However, the trial court found that the Hospital rendered free or at a reduced cost, care to over 5,100 indigents for the three fiscal years ending on June 30, 1995. The Hospital's expert testified that a hospital's obligation under the Hill–Burton Program was never intended to be a *quid pro quo* for the money a hospital received in the past. In fact, most hospitals have given far more in free care than they received in terms of benefits under the Hill–Burton Program. (382a.) The County, to the contrary, introduced no evidence on this issue.

The County also claims that Medicare and Medicaid shortfalls do not constitute charity care, if the unreimbursed costs of treating those patients are shifted to other paying patients. This argument was specifically rejected in *Couriers–Susquehanna, Inc. v. County of Dauphin*, 165 Pa.Cmwlth. 192, 645 A.2d 290 (1994) and *Mt. Macrina Manor, Inc. v. Fayette County Board of Assessment Appeals*, 683 A.2d 935 (Pa.Cmwlth.1996). The trial court recognized that notwithstanding the fact that the Hospital realized a surplus from treating Medicare patients in two fiscal years, it suffered substantial losses overall, from Medicare and Medicaid. Based on this finding, we hold that as long as the Hospital has provided services for reimbursement below cost or for free, for those poor or aged, the fact that some of these shortfalls were offset by Medicare surpluses in two fiscal years does not render the Hospital's subsidy to the needy any less gratuitous.

---

5. The Hill–Burton Program was a federal program initiated after World War II through which hospitals were entitled to grants for the construction or improvement of hospital facilities. (259a). In exchange for receiving these grants, the hospitals were required to provide a specified quantity of free care to indigent individuals for a 20–year period. If, at the end of the 20–year period, the hospital had not provided a sufficient quantity of free care, the obligation was extended beyond the 20–year period and any shortfalls had to be made up. (260a).

■ Next, the County asserts that the bad debts forgiven by the Hospital are merely the cost of doing business and should not be considered as donative. However, in the recent case of *Wilson Area School District v. Easton Hospital,* —— A.2d —— (No. 30 C.D. 1997, filed January 26, 1998), we rejected this argument stating:

> As to the reclassification of bad debts as charitable care, we agree with the trial court that the cost of uncollected billings is properly included as part of Easton's community donations. Easton should not forfeit its tax-exempt status merely because it attempts to run the hospital efficiently by seeking payment of bills before belatedly accepting the fact that the care rendered must be deemed free care. Indeed, such bad debts are properly understood as donated services because Easton expects that each year a certain amount of its services will not be reimbursed, yet it willingly accepts the write-off by continuing to treat uninsured patients, including those with bad payment histories where Easton has no realistic expectation of receipt.

Slip Op. at 12, —— A.2d at ——.

Finally, the County asserts that the Hospital's community service programs are actually public relations programs designed to encourage people to come to the Hospital instead of to one of its competitors. The trial court noted that the County failed to tell it who the competitors were and where they are located, as there are no hospitals within thirty miles of Lewistown Hospital. We agree with this perception and hold that considering all of the gratuitously given services, the Hospital meets the second prong of the *HUP* test of donating or rendering gratuitously a substantial portion of its services.

■ Next, the County argues that the Hospital fails the third prong of the *HUP* test, as it does not benefit a substantial and indefinite class of persons who are the legitimate subjects of charity. As discussed previously, the Hospital has an open admissions policy and treats Hill–Burton Program patients, as well as Medicare and Medicaid patients. Thus, this argument is without merit.

The County also asserts that the Hospital does not meet the fourth prong of the *HUP* test because it does not relieve the government of some of its burden. In *St. Margaret,* the Supreme Court stated that the test of whether an institution has relieved the government of some of its burden does not require a finding that the institution has fully funded the care of some people who would otherwise be fully funded by the government. The test is whether the institution bears a substantial burden that would otherwise fall to the government.

■ The trial court, applying the rationale of *St. Margaret,* found that the Hospital absorbs substantial shortfalls from Medicaid and Medicare. The court also found that the Hospital participates in several programs with the County, which includes providing autopsy services without cost. We agree with the trial court that without providing these services, the government would be required to carry this burden and thus, the Hospital meets the fourth prong of the *HUP* test.

■ Lastly, the County claims that the Hospital does not meet the final prong of the *HUP* test, i.e., that the entity operates free from profit motive. The trial court began its analysis by looking at the Hospital's corporate structure, which consists of both profit and non-profit organizations. Relying on *Sacred Heart,* the trial court concluded that its analysis must look solely at the Hospital's purpose without regard to the parent's or subsidiaries' function. In *Easton,* we held that the constitutional question was not whether the hospital generated a surplus but whether the revenues are applied to charitable purposes instead of to private gain. We further held that because: 1) no individual benefited from the hospital's revenues; 2) the trustees did not receive salaries; and 3) the salaried employees' salaries were not excessive, that Easton Hospital operated free from profit motive.

The trial court, here, made the same findings that: 1) that no individuals benefited from Lewistown Hospital's revenues; 2) the trustees did not receive salaries; and 3) the paid employees' salaries were not excessive. Thus, based on these findings, we hold that

the *Easton* analysis applies and the trial court properly held the hospital operates freely from profit motive.

In regard to this issue, the County additionally argues that the trial court improperly relied on *Sacred Heart*, in preventing it from examining the parent and its other subsidiaries' relation to the Hospital. In *Sacred Heart*, we held that corporations are independent entities and each must be examined on its own merits, stating that it is "illogical to consider the operations of multiple corporations when determining a single corporation's right to a charitable tax exemption...." *Id.* at 1025. Basically, the County contends that the *Sacred Heart* ruling works only one way—to prevent a corporation from relying on the activities of related organizations to obtain a "derivative" exemption, but not to exclude evidence of the activities of those organizations when an exemption is being challenged. We do not agree.

The core passage from *Sacred Heart*, clearly states that the activities of related organizations may not be considered "when determining a single corporation's right to a charitable tax exemption...." *Id.* This Court did not say that such evidence is to be excluded only when "defending" an exemption, but for the entire process of determining whether the corporation is exempt or not, regardless of which side has raised the issue. The reason for this separateness is not, as the County argues, based on the premise that it prevents parties claiming an exemption from "piggybacking" on the good works of others. Rather, it is based on the fundamental premise that each corporation is a separate and distinct entity and must be considered in a separate and distinct manner for tax purposes. *See Fellowship International Mission, Inc. v. Lehigh County Board of Assessment Appeals*, 690 A.2d 1271 (Pa. Cmwlth.1997). Therefore, we hold that the trial court properly denied the County's examination of the Hospital's parent and its other subsidiaries. Further, we hold that the Hospital has met the constitutional test of a "purely public charity" as developed in *HUP*.

Lastly, the County asserts that the Hospital failed to meet the statutory tests for an exemption. Section 204(a)(3) of the Assessment Law provides, in pertinent part, a real estate tax exemption for:

[a]ll hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, and charity ... founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose....

While conceding that the Hospital was founded by public or private charity, the County asserts that Lewistown Hospital is not endowed and maintained by charity, as required by statute. The trial court was not persuaded by this argument, stating that the fact that the majority of the Hospital's revenue comes from patient or third-party payments does not diminish the importance of the direct charitable contributions and volunteer services hours. Citing *West Allegheny*, the trial court stated that the support and repair of the Hospital need not be funded solely by charity and that necessary capital acquisitions need not be financed completely through charitable contributions. We must agree, because a hospital could not, in this century, remain operational if it was required to be supported, solely or even to a great extent, by direct contributions. Therefore, we hold that the trial court properly concluded that Lewistown Hospital met the statutory test for tax-exempt status, as well as the constitutional test previously discussed.

Accordingly, we affirm.

### ORDER

AND NOW, this 26th day of January, the order of the Court of Common Pleas of Mifflin County in the above-captioned matter is hereby affirmed.

SMITH, J., dissents.