**ALLIANCE FOR BUILDING COMMUNITIES, INC.,** Appellant

v.

**COUNTY OF LEHIGH BOARD OF AS-SESSMENT APPEALS,** Allentown School District and City of Allentown.

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2012.

Decided July 22, 2013.

Renee L. Ferretti, Allentown, for appellant.

Lucas J. Repka, Bethlehem, for appellee Allentown School District.

BEFORE: LEAVITT, Judge, and McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

Alliance for Building Communities, Inc. (Taxpayer) appeals the order of the Court of Common Pleas of Lehigh County (trial court) denying Taxpayer tax exempt status as an "institution of purely public charity" under Article VIII, Section 2(a)(v) of the Pennsylvania Constitution.[1] The trial court affirmed the determination of the Lehigh County Board of Assessment Appeals that Taxpayer failed to establish that it qualified for an exemption as a purely public charity. Taxpayer argues that the trial court erred by focusing only on Taxpayer's operation of 20 rental properties it owns in Allentown rather than the charitable nature of Taxpayer's entire organization. We agree and, therefore, vacate and remand.

Taxpayer is a Pennsylvania non-profit corporation that is tax exempt under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3); Taxpayer is also exempt from Pennsylvania sales and use tax. Its charitable mission is to provide affordable housing and counseling

---

1. Article VIII, Section 2 of the Pennsylvania Constitution states, in relevant part, that the General Assembly may by law exempt from taxation ... [i]nstitutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution. PA. CONST. art. VIII, § 2(a)(v).

services to low-income persons. To that end, Taxpayer manages approximately 420 individual rental units, of which it owns 90 units. At issue in this case are 36 rental units on 20 real properties located in the City of Allentown. In July 2010, Taxpayer filed applications for real estate tax exemption for these 20 properties, and the Lehigh County Board of Assessment Appeals denied the applications. Taxpayer appealed to the trial court, which consolidated the 20 tax appeals.

The trial court held a hearing at which Taxpayer presented the testimony of four of its employees: Gerald F. Alfano, President/CEO; Sheila Rhett, Property Manager; Bradley Fatzinger, Accounting Manager; and Maria Isidor, housing counselor. The testimony of Taxpayer's employees established the following uncontested facts.[2]

Taxpayer's total annual revenue in recent tax years ranged from approximately $1,427,000 to $2,460,000. Taxpayer is managed by an uncompensated board of directors. Taxpayer's annual payroll ranges from $368,000 to $450,000, and employee benefits add approximately $70,000 to $80,000 to that annual total. Taxpayer's five highest-paid employees' salaries, as of the date of the hearing, ranged from $40,973 to $73,000. Employee compensation is not tied to Taxpayer's financial performance.

Of the 20 properties at issue, 16 are leased to low-income tenants pursuant to a contract between Taxpayer and the United States Department of Housing and Urban Development (HUD) under its Section 8 rental subsidy program.[3] Those 16 prop-

erties contain 25 rental units. The other four properties, comprised of 11 rental units, are leased to mostly low or moderate income tenants at rents that are below market rates for the area.[4]

HUD's Section 8 housing program provides subsidies to Taxpayer's tenants to assist them with rent. All tenants must be prequalified in accordance with HUD Section 8 regulations and must sign a HUD-drafted lease. Tenants typically pay rent at the rate of 30% or less of their income, and HUD reviews tenants' income annually to establish rent and the HUD subsidy. Some tenants have their leases paid fully by HUD subsidies. Leases may be terminated for failure to pay the HUD-established rent and, although Taxpayer has forgiven delinquent rent in the past, that is not normal procedure. The HUD-established fair market rent is below the market value for the units in Allentown and is below HUD's guidelines for fair market rent in the Allentown–Bethlehem–Easton area. HUD performs regular inspections of the properties and requires that Taxpayer bring the properties up to code as a condition to receiving subsidies. The rents for the four Allentown properties not subsidized by HUD are set by Taxpayer, but they are below HUD's guidelines for fair market rent in the area. Tenants in the unsubsidized properties also have their income verified on a yearly basis by Taxpayer.

Taxpayer uses any revenue received to maintain properties, pay for counseling services and meet its other expenses. Taxpayer also receives charitable dona-

---

2. The City of Allentown intervened as an interested taxing authority, but did not participate in the hearing. The Allentown School District (School District) intervened as an interested taxing authority and cross-examined witnesses, but did not present any evidence.

3. Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f.

4. The four properties not included in the HUD program are 26 Fulton Street, 1025 Turner Street, 922 Walnut Street, and 1525 West Chew Street.

tions and government grants from the City of Allentown. The charitable donations and government grants are used for redevelopment projects for low-income housing. However, those grants are not used for any of the properties at issue.[5] In recent years, private donations have declined and account for less than five percent of Taxpayer's total revenue. Taxpayer's expenses for the 20 Allentown properties exceed the combined tenant-paid rent and HUD subsidies for those properties. As a result, the 20 Allentown properties generate losses, and Taxpayer must use funds from its more profitable properties to cover the deficits. Other properties owned by Taxpayer, not at issue in this case, have received tax exemptions. Notably, however, the trial court sustained an objection by the School District and prevented Alfano from testifying fully about Taxpayer's other properties or its real estate tax exemptions in other taxing districts. The trial court found Alfano's proffered testimony not relevant to the 20 Allentown properties that were the subject of the hearing. *See* Notes of Testimony, November 22, 2011, at 18–20; Reproduced Record at 21a–22a (R.R. ——).

Taxpayer also provides housing and financial counseling to first-time homebuyers. The Pennsylvania Housing Finance Authority funds these counseling sessions, but it limits payments to two-hour sessions. The counseling sessions typically average three-and-one-half hours. Taxpayer's counseling services are not connected to the 20 Allentown properties at issue in this case.

Taxpayer submitted into evidence its articles of incorporation, by-laws and its tax return filings for 2006 through 2009. Taxpayer's by-laws provide, in relevant part:

> [Taxpayer] shall be operated as [a] nonprofit corporation for any lawful purpose or purposes, conducted on a not-for-profit basis as is consistent with 15 Pa. C.S.A. § 5301 *et seq.* [sic], the Pennsylvania Nonprofit Corporation Law. The Primary Purpose of this corporation shall be to provide affordable housing and comprehensive housing counseling to low and moderate income households within the corporate limits of the City of Allentown, Bethlehem, Easton, Reading and the Counties of Lehigh, Northampton, Carbon, Monroe and Berks.

R.R. 61a. Taxpayer's tax return filings showed that it operated at a deficit in 2006 and 2007, but it generated income in 2008 and 2009. The tax returns also show annual donations of $274,153 for 2006, $211,082 for 2007, $119,291 for 2008, and $301,905 for 2009.[6] Taxpayer also submitted income statements showing operating deficits for the 20 Allentown properties.

The trial court held that Taxpayer failed to establish that it qualifies as a purely public charity under the Pennsylvania Constitution, as interpreted by the Pennsylvania Supreme Court. Specifically, the trial court found that Taxpayer did not donate or render gratuitously a substantial portion of its services because it collects fees for the services it provides. The trial court also found that Taxpayer did not relieve the government of any burden because it essentially operated as a pass-through for government funding. This appeal followed.

---

5. The record is not clear as to how Taxpayer came to own the 20 properties at issue. However, it is clear that the charitable donations and government grants are not currently used to finance the properties or cover any expenses associated with them.

6. These donations do not include government grants.

On appeal, Taxpayer presents four issues for our review.[7] First, Taxpayer contends that the trial court erred in finding that Taxpayer does not donate a substantial portion of its services relative to the subject properties. Second, Taxpayer asserts that the trial court's finding that it does not relieve the government of some burden is not supported by the evidence. Third, Taxpayer argues that it qualifies as a "purely public charity" under the Pennsylvania Supreme Court's seminal decision in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985), and, therefore, is exempt from real estate taxation under the Pennsylvania Constitution. Fourth, Taxpayer contends that it is an "institution of purely public charity" as defined in Section 5 of the Institutions of Purely Public Charity Act.[8]

We begin with a review of the relevant law. Article VIII, Section 2 of the Pennsylvania Constitution states, in pertinent part:

(a) The General Assembly may by law exempt from taxation:

\* \* \*

(v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.

PA. CONST. art. VIII, § 2(a)(v). Under this provision, the General Assembly is authorized to exempt institutions of purely public charity from property taxes, which it did by enacting the Institutions of Purely Public Charity Act, 10 P.S. §§ 371–385. However, because the term "purely public charity" is found in the Pennsylvania Constitution, only the courts can interpret whether an institution is a "purely public charity" before a tax exemption can be granted. *National Church Residences of Mercer County v. Mercer County Board of Assessment Appeals*, 925 A.2d 220, 225 (Pa.Cmwlth.2007).

In *Hospital Utilization Project*, 507 Pa. 1, 487 A.2d 1306, the Pennsylvania Supreme Court established a five-part test for determining whether an entity qualifies as a "purely public charity" under the Pennsylvania Constitution. The so-called *HUP* test provides:

[A]n entity qualifies as a purely public charity if it possesses the following characteristics.

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*Id.* at 21–22, 487 A.2d at 1317.[9]

In *Community Options, Inc. v. Board of Property Assessment*, 571 Pa.

---

7. This Court's scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law or whether its decision is supported by substantial evidence. *Grace Center Community Living Corp. v. County of Indiana*, 796 A.2d 1008, 1010 n. 3 (Pa. Cmwlth.2002). The trial court is the fact finder and resolves all matters of credibility and evidentiary weight, and its findings are binding if supported by substantial evidence. *Id.*

8. Act of Nov. 26, 1997, P.L. 508, No. 55, *as amended*, 10 P.S. § 375.

9. As a preliminary matter, it is uncontested that Taxpayer has met three prongs of the *HUP* test: advancing a charitable purpose; benefitting a substantial and indefinite class of persons who are legitimate subjects of

672, 676, 813 A.2d 680, 683 (2002), our Supreme Court clarified that judicial inquiry into an entity's tax exempt status begins with determining whether it satisfies the *HUP* test for a purely public charity. In applying the *HUP* test, the proper analysis is whether the institution, *as a whole,* meets the constitutional criteria. *Lock Haven University Foundation v. Clinton County Board of Assessment Appeals and Revision of Taxes,* 920 A.2d 207, 213 (Pa. Cmwlth.2007). If an institution satisfies all of the *HUP* test criteria, then the court must determine whether the institution as a whole meets the standards of the Institutions of Purely Public Charity Act.

■ We begin with Taxpayer's claim that the trial court erred in finding that Taxpayer did not satisfy the second prong of the *HUP* test, which requires that an entity claiming tax exempt status as a purely public charity donate or render gratuitously a substantial portion of its services. Taxpayer contends that the trial court misinterpreted and misapplied the Supreme Court's holding in *Alliance Home of Carlisle, PA v. Board of Assessment Appeals,* 591 Pa. 436, 919 A.2d 206 (2007). We agree.

In *Alliance Home,* Chapel Pointe, a nonprofit organization, owned and operated a licensed continuing care retirement community that included a skilled nursing facility and an assisted living facility, both of which were exempt from real estate taxes. Chapel Pointe applied for real estate tax exemption for an independent living apartment facility it operated in the same community. The trial court held that the independent living facility, viewed in isolation from the rest of the corporate community, did not qualify as an institution of purely public charity. This Court affirmed.

■ The Supreme Court reversed, holding that the trial court erred when it "did not then return to the question it initially posed, *i.e.,* whether [Chapel Pointe], *as a corporate entity,* qualified as an institution of purely public charity, but instead focused on the independent living apartments in *isolation from the rest of the institution.*" *Alliance Home,* 591 Pa. at 442–43, 919 A.2d at 210 (emphasis added). Individual parcel review is only performed after the institution as a whole is deemed a purely public charity. *Id.* at 465, 919 A.2d at 224. This two-step analysis is derived from the Constitution, which permits an exemption for (1) an *institution* of purely public charity and (2) "in the case of any real property tax exemptions[,] only that portion of real property of such institution which is actually and regularly used for the purposes of the institution." PA. CONST. art. VIII, § 2(a)(v). Applying the first part of this two-step analysis, the Supreme Court held that Chapel Pointe's independent living facility, which charged entrance fees upwards of $73,000, could be brought under the umbrella of a purely public charity by viewing Chapel Pointe as a single entity comprised of two other facilities, both of which were tax exempt.

Here, in applying the *HUP* test, the trial court committed the same error as the trial court in *Alliance Home.* The trial court sustained the School District's objection to the testimony of Taxpayer's CEO, Gerald Alfano, about the other properties Taxpayer operates. This prevented Taxpayer from offering the necessary evidence on the institution as a whole. Because the trial court limited the testimony to the 20 Allentown properties, and did not make findings of fact or conclusions of law as to

charity; and operating entirely free from private profit motive. These criteria are not at

issue in this appeal.

the entire institution, this Court cannot perform meaningful review. *Couriers–Susquehanna, Inc. v. County of Dauphin,* 165 Pa.Cmwlth. 192, 645 A.2d 290, 294 (1994) (noting that trial court's lack of critical finding of fact precluded this Court's meaningful review).

For this reason, we vacate and remand this matter to the trial court to conduct further proceedings necessary to determine Taxpayer's tax exempt status at the institutional level and then, if necessary, for a review of the 20 properties.[10]

## ORDER

AND NOW, this 22nd day of July, 2013, the order of the Court of Common Pleas of Lehigh County dated May 14, 2012, is hereby VACATED and this matter is REMANDED for further proceedings consistent with the attached opinion.

Jurisdiction relinquished.

10. Because we remand on the threshold issue raised by Taxpayer, we need not address the other issues presented.