The **LUTHERAN HOME AT TOPTON, Pennsylvania,**

v.

**SCHUYLKILL COUNTY BOARD OF ASSESSMENT APPEALS,**
Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 7, 2000.
Decided May 23, 2001.
Publication Ordered July 31, 2001.

Mary Kay Bernosky, Pottsville, for appellant.

Paul J. Datte, Pottsville, for appellee.

Before McGINLEY, Judge,
FLAHERTY, Judge, and MIRARCHI,
Jr., Senior Judge.

FLAHERTY, Judge.

The Schuylkill County Board of Assessment Appeals (County) appeals from a decision of the Court of Common Pleas of Schuylkill County (trial court) which reversed the County's decision and determined that the Lutheran Home at Topton (Lutheran Home) was entitled to real estate tax exemption status. We affirm.

The Lutheran Home owns real property located in North Manheim Township, Schuylkill County, designated Tax Parcel No. 18–24–118. The development on the property is a personal care boarding home known as Luther Ridge at Seiders Hill (Luther Ridge). Luther Ridge opened on July 15, 1999. It has approximately ninety-six residential facilities, for which private fees are charged according to the square footage rented. Currently sixty-four units are rented. Luther Ridge is also the base of operations for Schuylkill Ministries of the Lutheran Home (Ministries). Ministries is comprised of the Volunteer Home Care program, Meals on Wheels, Community Volunteers in Action program, Prime Time Health program, Apprise program, and the Senior Recourse Center Management program (Ministries' programs).

Lloyd Wertz, the Executive Director and Administrator at Luther Ridge (Wertz), testified that at the time of the hearing, Luther Ridge was subsidizing seven of its sixty-seven residents in amounts ranging from 25% to 80%. Notes of Testimony (N.T.), February 3, 2000, at 29. Wertz stated that the only financial requirement is the $100.00 deposit for processing the application; that there are no

other guidelines for admission. N.T. at 30. Wertz testified that: "we look at an individual's ability to remain at this level of care, and we try and assess his or her ability to pay privately for the services for a reasonable period of time. Reasonable period of time being the time that they would expect to be at this level of care." N.T. at 30.

Wertz testified that individuals who enter the facility usually pay for their services until they are unable to pay "due to the exhaustion of their assets." N.T. at 19. Once their assets are exhausted the individuals are not asked to leave, but are kept as before by Luther Ridge. Wertz stated that the non-eviction policy applies even when the individual must leave Luther Ridge and go onto a higher skilled care facility within the Lutheran Home. N.T. at 19. Wertz further stated that Luther Ridge requires applicants who are unable to demonstrate an ability to pay for its services for "a reasonable period of time," and those who are without any ability to pay at the time of application, be denied admission. However, if and when a resident becomes unable to pay, he or she will never be asked to leave Luther Ridge because of that inability to pay.[1]

The parties stipulated that the Lutheran Home is an institution of purely public charity within the meaning of what is commonly known as the Institutions of Purely Public Charity Act (Act), Act of November 26, 1997, P.L. 55, 10 P.S. § 371–385. However, the parties could not agree that the portion of the Lutheran Home known as Luther Ridge advances the charitable purpose of the Lutheran Home.

The trial court found that Luther Ridge donates or renders gratuitously a substantial portion of its services as required by 10 P.S. § 375(d). The trial court stated in pertinent part that:

> Although the testimony showed that Luther Ridge requires its residents to demonstrate an ability to pay for its services for a reasonable period of time, and that those who are without any ability to pay at the time of application will be denied admission, we found those facts not to be dispositive of the issue. The evidence also shows that, if and when a resident does become unable to pay, he or she will never be asked to leave Luther Ridge because of that inability.
>
> . . . .
>
> We also considered the evidence presented with regard to the other uncompensated goods and services supplied by the facility at Luther Ridge. The evidence showed that Luther Ridge is the base of operations for Schuylkill ministries of the Lutheran Home. . . . . All of those programs advance a charitable purpose within the confines of Schuylkill County. In 1998, the volunteers who work for those programs logged nearly 30,000 hours, all of which qualify as uncompensated services under 10 P.S. § 375(d)(1)(v).

Trial Court Opinion, May 30, 2000, at 2–3.

Next, the trial court found that Luther Ridge relieves the government of some of its burden as required by 10 P.S. § 375(f) of the Act. The trial court stated that Luther Ridge relieves the government of some of its burden as:

> Luther Ridge has a non-eviction policy which essentially provides that the costs of meeting a resident's most basic needs will be furnished free of charge if he runs out of funds. If Luther Ridge did not fully subsidize that resident, but in-

---

1. See the Lutheran Home's "Non–Eviction Policy", followed by all Lutheran Home facilities. Notes of Testimony (N.T.), February 3, 2000, Exhibit No. 7 admitted at 10.

stead chose to evict the resident, that resident would then become the burden of the government. In addition, the various Schuylkill Ministries programs permanently based at Luther Ridge relieve the government of some of its burden. Trial Court Opinion, May 30, 2000, at 3–4. The trial court concluded that Luther Ridge is used for purely charitable purposes and declared the property exempt from real estate tax. The County appealed to our Court.

On appeal the County contends that the trial court erred in determining that Lutheran Ridge met its burden of proof under Section 5(b) and (f) of the Act.[2]

An organization does not qualify as a purely public charity merely because it is a non-profit corporation, and it is irrelevant whether the organization is recognized as a tax-exempt charity for federal income tax purposes. *Sacred Heart Healthcare System v. Commonwealth*, 673 A.2d 1021 (Pa.Cmwlth.1996). The test to determine what constitutes a purely public charity was decided by the Pennsylvania Supreme Court in *Hospital Utilization Project [HUP] v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985). By satisfying the *HUP* test, the applicant demonstrates that it meets the minimum constitutional qualifications for being an appropriate subject of a tax exemption. *Lehighton Area School District v. Carbon County Board of Assessment*, 708 A.2d 1297 (Pa.Cmwlth. 1998). In *HUP*, the Pennsylvania Supreme Court held that an entity qualifies as a purely public charity if it possesses the following characteristics:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

---

2. Section 5(b) of the Act, 10 P.S. § 375(b) provides in pertinent part as follows:

   Charitable purpose.—The institution must advance a charitable purpose. This criterion is satisfied if the institution is organized and operated primarily to fulfill any one or combination of the following purposes:
   (1) Relief of poverty.
   (2) Advancement and provision of education. This paragraph includes postsecondary education.
   (3) Advancement of religion.
   (4) Prevention and treatment of disease or injury, including mental retardation and mental disorders.
   (5) Government or municipal purposes.
   (6) Accomplishment of a purpose which is recognized as important and beneficial to the public and which advances social, moral or physical objectives.
   Section 5(f) of the Act, 10 P.S. § 375(f) provides in pertinent part as follows:
   Government service.—The institution must relieve the government of some of its burden. This criterion is satisfied if the institution meets any one of the following:
   (1) Provides a service to the public that the government would otherwise be obligated to fund or to provide directly or indirectly or to assure that a similar institution exists to provide the service.
   (2) Provides services in furtherance of its charitable purpose which are either the responsibility of the government by law or which historically have been assumed or offered or funded by the government.
   (3) Receives on a regular basis payments for services rendered under a government program if the payments are less than the full costs incurred by the institution, as determined by generally accepted accounting principles.
   (4) Provides a service to the public which directly or indirectly reduces dependence on government programs or relieves or lessens the burden borne by government for the advancement of social, moral, educational or physical objectives.
   (5) Advances or promotes religion and is owned and operated by a corporation or other entity as a religious ministry and otherwise satisfies the criteria set forth in section 5.
   (6) Has a voluntary agreement under section 7.

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from profit motive.

*HUP*, 507 Pa. at 22, 487 A.2d 1306. Advancing a charitable purpose of the institution and relieving the government of some of its burden was required under *HUP* in order to prove tax-exempt status, but under the Act, this merely provides a mechanism for the municipality to challenge the tax-exempt status of the institution. Once challenged, the institution must prove that it advances a charitable purpose within one of the six meanings of Section 5(b) of the Act, and relieves the government of some of its burden within one of the six meanings of Section 5(f) of the Act.

■ The trial court considered the disputed prongs of the Act as it applied to Luther Ridge and concluded that the Luther Ridge met each prong of the Act.[3] The findings of a trial court in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury, and those findings will not be disturbed on appeal absent an error of law or clear abuse of discretion. *Estate of Shelly*, 484 Pa. 322, 399 A.2d 98 (1979).

A. Advances a Charitable Purpose

■ The County contends under the Section 5(b) of the Act, 10 P.S. § 375(b), that the Lutheran Home does not advance a charitable purpose because the residents will not be admitted unless they are financially able to subsidize their lifetime costs by paying for their care for a "reasonable time"; that almost all residents privately pay 100% of the cost of their stay; that admission has been denied to individuals solely on the basis that they are unable to pay; that a $100.00 non-refundable pro-

cessing fee is charged for permanently placing residents; and that the rates are based on the square footage rented, which rates exceed the market rates for rental properties in the market area.

The stated purpose of the Lutheran Home, as that purpose is stated in its Amended and Restated Charter, is charitable and, therefore, this argument is not a legal argument but a factual contention. Luther Ridge is meeting its stated purpose.

■ The trial court correctly concluded that the question then becomes whether the requirement that the resident pay a processing fee of $100.00, that the resident have enough assets to pay privately for services for a reasonable period of time, and that the rates charged per square foot rented exceed market rates for rental properties in the market area, violates the requirements of the Luther Ridge stated purpose to establish a charitable and benevolent organization. A charitable purpose does not require the resident to be destitute. *In re City of Washington*, 550 Pa. 175, 704 A.2d 120 (1997).

In the present controversy, the trial court found that:

> Although the testimony showed that Luther Ridge requires its residents to demonstrate an ability to pay for its services for a reasonable period of time, and that those who are without any ability to pay at the time of application will be denied admission, we found those facts not to be dispositive of the issue. The evidence also shows that, if and when a resident does become unable to pay, he or she will never be asked to

---

**3.** The County does not dispute or brief for our review prong (c), (d), or (e) of the Act and, therefore, we will not consider those issues here.

leave Luther Ridge because of that inability. . . . .

Trial Court Opinion, May 30, 2000, at 2–3.

■ It is well settled that the trial court is the fact finder in tax assessment appeals and all matters of credibility and evidentiary weight are within the province of the trial court as the finder of fact. *Appeal of M.W. Kellogg Co.*, 89 Pa. Cmwlth. 320, 492 A.2d 130 (1985). Thus, the findings of the trial court are binding on appeal to this Court where they are supported by substantial evidence of record. *St. Margaret Seneca Place v. Board of Property Assessment, Appeals and Review*, 536 Pa. 478, 640 A.2d 380 (1994). After a review of the record, we find substantial evidence to support the trial court's finding that, while the residents must pay a $100.00 deposit, show an ability to privately pay for services for a reasonable period of time and pay a higher rental rate than that of the area, that the purpose of Luther Ridge was charitable, as Luther Ridge must keep all of its residents even if they become unable to pay. The trial court's conclusion that Luther Ridge is used for purely charitable purposes was supported by substantial evidence of record. Therefore, we find that the trial court was correct in determining that Luther Ridge advances a charitable purpose.

**B. Relieves the Government of some of its Burden**

■ Next, the County argues that because residents of Luther Ridge do not qualify under Medicare or Medicaid; and because residents must pay some of the cost of their residency, that Luther Ridge fails to qualify for a tax exemption under the Act.

■ The cost of caring for the residents of Luther Ridge is a charitable act. "[T]he public will fund the patient's care at a public institution . . . . [which] is deemed to be a public responsibility. The aged in need of medical care are legitimate objects of charity. . . . . The partial subsidy of the costs of caring for an elderly patient is unquestionably a charitable act." *St Margaret*, 536 Pa. at 485, 640 A.2d at 383–84. A finding that the institution has fully funded the care of some people who would otherwise be fully funded by the government is not required in determining whether an institution has relieved the government of some of its burden. The test is whether the institution bears a substantial burden that would otherwise fall to the government. *Id.* at 488, 640 A.2d at 385.

[T]he absence of indigent residents who receive no government support is not surprising, and is certainly not, standing alone, enough to disqualify a nursing home from an exemption as a purely public charity. In modern America it is hard to find any person in need of nursing home care who is uninsured, unable to pay, and wholly ineligible for government support in the form of Medicare or Medicaid coverage.

*Id.* at 483, 640 A.2d at 382.

In *Mt. Macrina Manor, Inc. v. Fayette County Board of Assessment Appeals*, 683 A.2d 935 (Pa.Cmwlth.1996), our Court found that in subsidizing nursing care and medical services, Mt. Macrina relieved the government of some of its burden. Mt. Macrina subsidized nursing care and medical services to residents that were unable to afford the proper care. The residents were, therefore, the "natural recipients of public charity, which service our Commonwealth considers a governmental responsibility." *Id.* at 941.

In the present controversy, Luther Ridge was found to relieve the government of some of its burden by providing the "costs of meeting a resident's most basic

needs ....free of charge if he runs out of funds," and by providing the Ministries programs to the community. Trial Court Opinion at 3–4. The testimony provided that Luther Ridge was subsidizing seven of its sixty-seven residents at the time of the trial and it had only been operating since July 15, 1999. As long as sufficient evidence exists in the record to support the finding made by the trial court as factfinder, we are precluded from overturning that finding. *Commonwealth, Department of Transportation v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989).

Accordingly, we affirm.

### ORDER

AND NOW, this 23rd day of May, 2001, the order of the Court of Common Pleas of Schuylkill County in the above-captioned matter is affirmed.