# Missionary Sisters of the Most Sacred Heart of Jesus Inc. v. Berks County Board of Assessment Appeals

C.P. of Berks County, no. 04-13889.

*Paul T. Essig* and *Molly K. Starr,* for appellant.
*Edwin L. Stock,* for appellee.

LASH, *J.,* June 6, 2005—The appellant, Missionary Sisters of the Most Sacred Heart of Jesus Inc., has appealed the decision of the Berks County Board of Assessment Appeals granting a partial exemption to real estate owned by Missionary Sisters. The board had assessed the property at $6,186,200, with the taxable portion of the assessment being $1,870,000. A non-jury trial was held on May 10, 2005. The sole issue raised on appeal is whether the premises is fully exempt from local taxation as an institution of purely public charity.

This court makes the following findings of fact:

## I. FINDINGS OF FACT

(1) The appellant, Missionary Sisters of the Most Sacred Heart of Jesus Inc., is a Pennsylvania nonprofit corporation with its principal place of business located at 2811 Moyer Lane, Reading, Berks County, Pennsylvania 19605.

(2) The appellee, Berks County Board of Assessment Appeals, is located at the Berks County Services Center,

Third Floor, 633 Court Street, Reading, Berks County, Pennsylvania 19601.

(3) The property that is subject to this appeal is located at 51 Seminary Avenue, Muhlenberg Township, Muhlenberg School District, Berks County, Pennsylvania, and consists of approximately 41.93 acres of land, together with a convent building and cemetery site for the sisters.

(4) The Missionary Sisters have always provided for the care of their sick and elderly members by maintaining its own nursing facilities located in the convent building.

(5) The cost of this care is borne by Missionary Sisters, however, sisters receiving Social Security or SSI benefits transfer these benefits to Missionary Sisters to help defray the costs of their care.

(6) Sisters residing in a personal care service facility receive increased Social Security benefits.

(7) In an effort to better care for their elderly and sick members, the Missionary Sisters opened the convent as a licensed personal care service facility, thereby maintaining their ability to care for those sisters in need of assisted and skilled care and entitling those sisters to additional SSI benefits.

(8) The Missionary Sisters created the Sacred Heart Villa, a Pennsylvania nonprofit corporation, which is controlled by the Provincial Superior and the Provincial Councilors of the order, to operate the licensed personal care services facility.

(9) The Sacred Heart Villa has been designated as a section 501(c)(3) organization by the Internal Revenue Service.

(10) On or about May 21, 2004, the Commonwealth of Pennsylvania, Department of Public Welfare, issued a personal care services license to Sacred Heart Villa.

(11) The Sacred Heart Villa is certified by DPW to operate personal care services for up to 100 persons.

(12) On or about May 27, 2004, the missionary sisters entered into a lease agreement with Sacred Heart Villa for the convent building to operate the personal care services facility (subject property).

(13) The number of sisters requiring personal care services has consistently been substantially less than 100 persons. Currently, 57 sisters reside in the convent and utilize the personal care services.

(14) To fill the remaining available beds, and to help defray the costs, Sacred Heart Villa has accepted qualified members of the public as residents.

(15) Sacred Heart Villa has designated 40 beds for the public, located in the front portion of the convent.

(16) A public applicant qualifies to become a resident if the applicant establishes ownership of sufficient assets to pay the cost for his care from the inception of the residency through his estimated life expectancy.

(17) While ownership of sufficient assets must be established to qualify the applicant, the assets are not immediately transferred to Sacred Heart Villa, but remain in the applicant's possession, who is responsible for pay-

ing the monthly residency fee from the assets, or from Social Security or pension benefits received.

(18) Sacred Heart Villa does not require that the assets be escrowed, that a lien be placed upon the assets, or that the resident be otherwise legally bound to transfer the assets to Sacred Heart Villa.

(19) If the resident's assets are used up and the applicant is unable to continue to pay the costs of the personal care, the resident nevertheless may continue to reside at the convent for the duration of his life, without paying any additional costs.

(20) Sacred Heart Villa leases the space from the Missionary Sisters for an annual rental of $173,166.12.

(21) The Missionary Sisters pay to Sacred Heart Villa resident fees for the care of their elderly members.

(22) In 2004, the Missionary Sisters paid approximately $734,183.81 to Sacred Heart Villa in resident fees for those sisters requiring assisted care.

(23) In 2004, the Missionary Sisters paid approximately $189,600 to Sacred Heart Villa in resident fees for those sisters requiring skilled care.

(24) In 2004, Sacred Heart Villa received approximately $87,585 in resident fees from qualified members of the public for non-skilled living care and $12,000 for skilled living care.

(25) In 2004, Sacred Heart Villa had revenues in an approximate amount of $1,070,624.05.

(26) In 2004, Sacred Heart Villa had expenses in an approximate amount of $1,715,994.14.

(27) In 2004, the Missionary Sisters subsidized the Sacred Heart Villa in an approximate amount of $862,255.60 in order to maintain its operation.

(28) The Assessment Office changed the assessment from a total exemption of $5,737,800 to a partial exemption of $4,316,200 and taxable $1,870,000, for a total assessment of $6,186,200.

(29) On or about July 14, 2004, the Missionary Sisters filed an appeal on the amount of the assessment and on the issue of exemption.

(30) On or about August 16, 2004, the board upheld the determination of the Assessment Office and sent a final notice of the determination on September 2, 2004.

(31) On or about September 24, 2004, the Missionary Sisters appealed the board's determination to the Court of Common Pleas of Berks County.

(32) By order dated February 16, 2005, this honorable court bifurcated the proceedings and this issue of exemption is now before the court.

## II. DISCUSSION

The authority permitting certain real estate to be declared exempt as a purely public charity appears in Article VIII, Section 2(a) of the Constitution of the Commonwealth of Pennsylvania, which provides in part: "The General Assembly may by law exempt from taxation: . . . (v)(d) Institutions of purely public charity . . . ."

From this authority, the General Assembly provided in section 204(a)(3) of the General County Assessment

Law[1] that the following properties shall be exempt from all county, city, borough, town, township, road, poor and school tax:

"(3) All hospitals, universities, colleges, seminaries, academics, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity; provided, that the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purposes: . . ."

Interpretation of exemption of real estate owned by public charities is now governed by the Institution of Purely Public Charity Act.[2] To qualify as an institution of purely public charity, section 375(a)[3] sets forth five criteria. First, the institution must advance a charitable purpose. Second, the institution must operate entirely free from a private profit motive. Third, the institution must donate or render gratuitously a substantial portion of its services. Fourth, the institution must benefit a substantial and indefinite class of persons who are legitimate subjects of charity. Finally, the institution must relieve the government of some of its burden.

Missionary Sisters has the burden to establish exemption as an institution of purely public charity. *Borough*

---

1. 72 P.S. §5020-204(a)(3).

2. Purely Public Charity Act, 1997, November 26, P.L. 508, no. 55, §1, 10 P.S. §371.

3. 10 P.S. §375(a).

*of Homestead v. St. Mary Magdalen Church,* 798 A.2d 823, 826 (Pa. Commw. 2002). The board agrees that the second criterion, that Missionary Sisters operates free from a private profit motive, is met. The board argues, however, that Missionary Sisters fails to meet any of the other four criteria. In essence, the board believes that the portion of the building designated for personal care services for the general public should not be included as exempt because these members are subject to paying market rate monthly charges which ultimately may produce profit.

The Sacred Heart Villa is a 501(c)(3) corporation created by Missionary Sisters to provide a personal care facility for sisters of the order, as well as members of the general public. Missionary Sisters leases the St. Michael's convent building to Sacred Heart Villa, who provides a facility of 100 beds, furnishing personal care services certified by the DPW. The facility features a large building with a chapel, a social hall, a dining room, well-kept grounds and single and double space rooms for the residents.

Missionary Sisters has historically been responsible for caring for sisters in need of personal or assisted care, including paying the costs for their care. The decision to incorporate Sacred Heart Villa to provide a certified personal care facility subsidized the cost to Missionary Sisters for the care of the sisters in two ways. First, to assist in the cost of their care, any sister eligible for Social Security or SSI benefits would transfer those benefits to Missionary Sisters. Once a sister became a member of a personal care facility, however, she became entitled to an additional allotment from the federal government.

Typically, the SSI benefit would increase from $440 to $770 per month.

Secondly, the size of the convent was more than was needed for the care of the sisters. By opening the convent to the public, additional income could be generated. Currently, 57 sisters reside in the convent and utilize the personal care services. There is available space in the front of the convent for up to 40 members of the public.

Currently, the residential fee charged by Sacred Heart Villa to a public resident ranges from $1,425 a month up to $3,000 a month. To qualify for a room, an applicant from the public sector must own assets sufficient to pay the cost of his care from the time care commences through his estimated life expectancy. The assets are not turned over to Sacred Heart Villa nor escrowed, but are merely pledged as being available. The resident is charged on a monthly basis, paying costs from the reserved assets, as well as from any Social Security or pension benefits received. The public resident receives the same care and has access to the same programs and facilities as do the sisters residing in the convent.

Sacred Heart Villa operates annually at a loss. The shortfall is assumed by Missionary Sisters. Considering solely the income and expense attributable to the public residency, that portion of the operation also shows a loss. However, if all the beds allotted to the public were filled, it is expected that a net profit would be generated. Nevertheless, all income or profit realized from the public use merely reduces the amount of the subsidy paid by Missionary Sisters to Sacred Heart Villa.

By finding the property partially exempt, the board concedes that the personal care services provided for the sisters fully meet the criteria of the Act. They contend, however, that the services provided to public residents should be analyzed separately merely because those residents are required to pay market rates and must qualify for residency through the pledging of owned assets sufficient to cover the costs of residency through their life expectancy.

We disagree. The benefits received by the public here cannot be considered separate and apart from the benefits provided to the sisters. The primary goal of the Missionary Sisters is to provide personal care services for the sisters in a pleasant and attractive setting. Were it not for the pursuit of this purpose and the fact that there is substantial additional space available, personal care services for public residents would not have been made available. The public residents' dependence upon the larger purpose is manifest in the standard of care provided consistent with that received by the sisters and free access to the same facilities and programs available to the sisters. Most importantly, the subsidy provided by Missionary Sisters cover the loss incurred by Sacred Heart Villa in providing residency to the public.

The board's position that the payor status of the public residents is sufficient to disqualify the Missionary Sisters as a public charity is not accurate. The financial qualifications are based on life expectancy. If a resident exceeds his life expectancy, Sacred Heart Villa continues to care for the resident at no additional cost. Secondly, while the value of the assets must be sufficient at

the time of application, Sacred Heart Villa does not require the resident to bind himself to maintain the assets for eventual payment for the costs of the care. Thus, if the resident transfers or squanders his assets before they are exhausted through payment to Sacred Heart Villa, he nevertheless may continue in his residency at no additional cost. Finally, all income generated from the residents' assets, Social Security and pension merely defray the cost of the operating expenses of Sacred Heart Villa, which nevertheless operates at a substantial loss, requiring subsidy from Missionary Sisters.

As stated in the case of *Grace Center Community v. County of Indiana,* 796 A.2d 1008, 1011 (Pa. Commw. 2002), an institution which collects fees or charges for its services and absorbs only a fraction of its cost can qualify for tax exemption as a purely public charity. The Commonwealth Court in *Grace Center* cites the Pennsylvania Supreme Court in the case of *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A.2d 776 (1968), stating:

"In *Presbyterian Homes,* our Supreme Court held that a rest home qualified for charitable tax-exempt status where many residents paid their way completely and covered 80 percent of the operational costs of the rest homes. The court stressed that the rest home had never in any year realized a profit and, even more important, if there were profit, it would not go to an individual or to a corporation operated for private profit. *Presbyterian Homes,* 428 Pa. at 153-54, 236 A.2d at 780. Our Supreme Court noted:

" 'The courts have long recognized and declared that charity is not limited to giving alms, is not confined to

relief of the poor, may extend to the rich in areas where they are not able to care for themselves, and extends to those social objectives which promote the general welfare and would be served by the government in the absence of philanthropic enterprises such as homes for the aged. *Historically, and well-nigh unanimously, the courts have found homes for the aged to be charitable institutions where conducted at cost or less.* They have also recognized that man, especially the old, does not live by bread alone; that though he be able to pay for all material wants he nevertheless may be dependent upon his fellow man or the government to protect him from the haunting fear of loss of all his property with resultant poverty, fear of illness or other physical disability overtaking him with no one near to help, fear of the loneliness arising from absence of social contacts, fear of any of the tragedies of old age where there is no one standing by to help.'

"*Id.* at 152, 236 A.2d at 779-80. (emphasis added) (citations omitted)" *Grace Center, supra* at 1012.

Looking specifically at the criteria under the Act, we find that Missionary Sisters has met its burden. First, Missionary Sisters advances a charitable purpose. A charitable purpose does not require the resident to be destitute. *City of Washington v. Board of Assessment Appeals of Washington County,* 550 Pa. 175, 704 A.2d 120 (1997). As already cited, homes for the aged have been found to be charitable institutions where conducted at cost or less. In *Lutheran Home at Topton v. Schuylkill County Board of Assessment Appeals,* 782 A.2d 1 (Pa. Commw. 2001), the Commonwealth Court affirmed the

trial court regarding a retirement home who required the resident to pay a processing fee of $100, and to have sufficient assets to pay privately for services for a reasonable period of time, with the rates being higher per square foot than market price. Those without the ability to pay at time of application were denied admission. The court found that the retirement home advanced a charitable purpose because care for the residents continued even when they became unable to pay for the services.

Secondly, there is no doubt that Missionary Sisters donates substantial funds for the personal care services. According to undisputed documentation, Sacred Heart Villa experienced a loss of $862,955.35 for 2004. The projected loss for 2005 is $662,505. Looking solely at the public population, the projected loss for 2005 is $26,382.16. Should the payments from the public population eventually generate a profit, that profit would nevertheless be subsumed within the overall loss of the operation upon which the public population is dependent.

Regarding the next criterion that the charity benefit a substantial and indefinite class of persons who are legitimate subjects of charity, the board contends, once again, that the public residents are not part of this class because "these are people with assets and sources of income." However, for reasons already set forth, these residents are also legitimate subjects of charity. As stated in *In re City of Washington,* 550 Pa. 175, 185, 704 A.2d 120, 125, "There is no requirement, however, that all of the benefits bestowed by a purely public charity go *only* to the financially needy." (emphasis in original)

Sacred Heart Villa continues to care for those whose assets are exhausted. This alone is sufficient to qualify the residents as subjects of charity. See *Presbyterian Homes* and *Lutheran Home at Topton, supra.* Further, while the assets and income may be sufficient for admission, the assets and income may not be sufficient to cover prevailing fees for comparable facilities. "Persons who are financially secure may nevertheless be 'poor' in relation to the outlays needed to obtain certain services in the absence of charity." *Hahn Home v. York County Board of Assessment Appeals,* 778 A.2d 755, 762 (Pa. Commw. 2001), citing *City of Washington,* 550 Pa. at 184, 704 A.2d at 124. Thus, the costs of the care which the public residents share with the sisters may be significantly more affordable over the course of their life than would be the case if they were relegated to obtaining services from a noncharitable organization. This court finds that this criterion is met.

Finally, we find that the last criterion, that Missionary Sisters relieves the government of some of its burden, is satisfied. On similar facts, the Commonwealth Court affirmed the trial court in the case of *Lutheran Home at Topton, supra* at 6-7, noting that the institution "was found to relieve the government of some of its burden by providing the 'costs of meeting a resident's most basic needs . . . free of charge if he runs out of funds' and by providing the ministries programs to the community." In support, the Commonwealth Court cited *St. Margaret Seneca Place v. Board of Property Assessment Appeals and Review,* 536 Pa. 478, 640 A.2d 380 (1994), as follows:

" '[T]he public will fund the patient's care at a public institution . . . . [which] is deemed to be a public respon-

sibility. The aged in need of medical care are legitimate objects of charity. . . . The partial subsidy of the costs of caring for an elderly patient is unquestionably a charitable act.' *St. Margaret,* 536 Pa. at 485, 640 A.2d at 383-84. A finding that the institution has fully funded the care of some people who would otherwise be fully funded by the government is not required in determining whether an institution has relieved the government of some of its burden. The test is whether the institution bears a substantial burden that would otherwise fall to the government. *Id.* at 488, 640 A.2d at 385.

" '[T]he absence of indigent residents who receive no government support is not surprising, and is certainly not, standing alone, enough to disqualify a nursing home from an exemption as a purely public charity. In modern America it is hard to find any person in need of nursing home care who is uninsured, unable to pay, and wholly ineligible for government support in the form of Medicare or Medicaid coverage.'

"*Id.* at 483, 640 A.2d at 382." *Lutheran Home at Topton, supra* at 6.

This court holds that Missionary Sisters qualifies as a purely public charity under the Act and is, therefore, entitled to total exemption for the subject property. Accordingly, we enter the following order:

## ORDER

And now, June 6, 2005, upon consideration of the appeal of Missionary Sisters of the Most Sacred Heart of Jesus Inc., from the decision of the Board of Assessment

Appeals of Berks County, Pennsylvania, and after trial held, the decision of the Board of Assessment Appeals granting appellant a partial exemption for the property located at 51 Seminary Avenue, Muhlenberg Township, Berks County, Pennsylvania, pin no. **-****-**-**-****-***, is reversed. Appellant shall receive full exemption from property tax assessment for the aforesaid property.