# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of the Coatesville Area   :
School District From the Decision of the   :
Chester County Board of Assessment   : No. 1130 C.D. 2018
Appeals for the Property Located at   :
50 South First Avenue, City of Coatesville,  :
Chester County, Pennsylvania Property   :
Tax Parcel No. 16-05-0229.0000   :
  :
Appeal of: Coatesville Area School District  :


In Re: Appeal of the Coatesville Area   :
School District from the Decision of The   :
Chester County Board of Assessment   : No. 1161 C.D. 2018
Appeals for Property Located at 50 S. First  : ARGUED: September 20, 2021
Avenue, Coatesville, Chester County   :
Pennsylvania   :
  :
Tax Parcel No. 16-05-00229.0000   :
  :
Appeal of: Huston Properties, Inc.   :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**            **FILED: August 19, 2022**


Now before the Court for disposition on the merits are the cross-appeals of the Coatesville Area School District and Huston Properties, Inc., from the order of the Court of Common Pleas of Chester County setting the assessment of the subject parcel of real property (Property), at $267,250 for the tax years 2014 and 2015, representing a 72% partial exemption from its previous assessment of

$954,450. We affirm in part and reverse in part, concluding that Huston Properties is entitled to a 100% exemption from the assessment on the Property.

**Procedural History**

In August 2013, Huston Properties applied for an exemption from real estate taxes, claiming entitlement as an institution of purely public charity. After a hearing, the Chester County Board of Assessment Appeals (Board) granted a partial exemption of 72%. The District and the City of Coatesville appealed to the trial court, challenging the Property's partial exemption. After a hearing on the merits, the trial court issued two orders affirming the Board, each of which were appealed to this Court by the District and the City and cross-appealed by Huston Properties.

In an unpublished decision, *In re: Appeal of City of Coatesville* (Pa. Cmwlth., Nos. 511, 530, 607, and 608 C.D. 2016, filed February 16, 2017), we vacated the decision of the trial court and remanded for findings of fact and conclusions of law with respect to whether Huston Properties satisfied the requirements to qualify as a purely public charity set forth in *Hospital Utilization Project v. Commonwealth*, 487 A.2d 1306 (Pa. 1985) (*HUP*), referred to as the *HUP* test, and the Institutions of Purely Public Charity Act[1] (Act 55), as well as the Consolidated County Assessment Law, 53 Pa.C.S. §§ 8801-8868.

On remand, the trial court issued a decision in June 2018, which addressed the elements of the *HUP* test and Section 5 of Act 55, 10 P.S. § 375. However, the trial court's opinion did *not* address the requirements for a charitable exemption under the Consolidated County Assessment Law. The District again appealed the decision of the trial court with regard to the order disposing of its appeal

---

[1] Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371-385.

but not an essentially identical order entered in the City's appeal; the City did not further appeal. Huston Properties cross-appealed. The matter returns to us for decision after a prior order dismissing the appeal was vacated by the Supreme Court of Pennsylvania.[2]

## Factual History

The facts may be summarized as follows. The Property, Parcel No. 16-06-0229.0000, consists of 3.88 acres at 50 South First Avenue, Coatesville, Chester County, on which sits the Huston Building. The Building is approximately 120 years old (the original portion of the Building was built in 1902 and 1903 and a second wing was added in 1916). The Building originally served as the corporate headquarters of the Lukens Steel Company, which was the first producer of boiler plate in the United States. The Property was conveyed from the Bethlehem Steel Corporation to Huston Properties in 2000 with the deed restriction that the Property "be used as a site of an office building and otherwise only for purposes consistent with the preservation and conservation of said tract of land as a historic structure." (Deed, Reproduced Record "R.R." at 174a.) The Property is entered in the National Register of Historic Places and is located in a historic overlay district created by the City of Coatesville to protect historic resources.[3] Huston Properties has maintained

---

[2] This Court granted Huston's motion to quash based upon grounds of *res judicata* and collateral estoppel and dismissed the matter because only one of two orders on the dual appeals by the City and School District was appealed. *See In re Coatesville Area Sch. Dist.*, 216 A.3d 539 (Pa. Cmwlth. 2019). However, our Supreme Court vacated our order and remanded for a decision on the merits. *See In re Coatesville Area Sch. Dist.*, 244 A.3d 373 (Pa. 2021).

[3] The historic overlay district has not been recognized by the Pennsylvania Historical and Museum Commission.

the Property consistent with the deed restrictions requiring its use as an office building and the purposes of conserving and protecting it as a historic structure.

Huston Properties is a wholly-owned subsidiary of the Stewart Huston Charitable Trust (Trust). Huston Properties is organized as a non-profit corporation registered in Pennsylvania and as a holding company under Section 501(c)(2) of the United States Internal Revenue Code, 26 U.S.C. § 501(c)(2). Huston was organized and operates "exclusively to hold property, collect income therefrom, and turn the entire income, less expenses, over to the . . . Trust . . . ." (Articles of Incorporation at Ex. A, R.R. at 184a.) The Trust is a testamentary charitable trust created by the will of Stewart Huston (Last Will and Testament of Stewart Huston, R.R. at 698a-746a), organized under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). The Trust is the sole member of Huston Properties. If Huston Properties were to be liquidated, the funds would revert to the Trust. (Articles of Incorporation at Ex. A, R.R. at 184a.)

Huston Properties maintains and preserves the Property as a historic structure—the trial court found that this was Huston Properties' function for purposes of applicable legal standards (the *HUP* test and Act 55). Huston Properties' expenses on the Property have consistently exceeded its income, with rents from tenants not covering operating expenses. The Property is let to multiple tenants comprising for-profit and non-profit entities, with some of the non-profits paying only nominal rent. Between 2008 and 2014,[4] Huston Properties rented approximately 89% of the usable space in the building to non-profits. Other entities—the Trust and the Lukens Band, the oldest community band in the United

---

[4] The hearing in this matter was conducted in November 2015. (*See* Notes of Testimony "N.T.," R.R. at 15a-142a.)

States—are allowed to use space at the Property rent-free. The Greystone Society, a non-profit, occupying 1,800 square feet in the building, houses a museum and conducts educational activities for the Lukens National Historic District.

Although Huston Properties provides no direct services to the City, the trial court found that Huston Properties' service to the community is to maintain the historic structure on the Property. (Trial Ct. Op. at 3.[5]) Huston Properties has expended significant funds in preserving and maintaining the Property; because its expenses have historically exceeded its income, it has required ongoing subsidies from the Trust. For the tax years 2008-2014, Huston Properties' expenses exceeded its revenue by an average of approximately $39,000 per year, with the balance subsidized by the Trust. The trial court found that Huston Properties cannot generate sufficient revenue to pay all operational expenses and that Huston Properties is not engaged in a commercial venture in competition with others. (*Id*. at 6.) All revenues received are used for the maintenance and preservation of the Property, which the trial court termed a "historic resource." (*Id*. at 8 and 10.) The trial court found that the preservation and maintenance of the Property would not be within the resources of the general public. (*Id*. at 4.) The trial court found that Huston Properties leases portions of the Property to various non-profits for nominal rent, thereby "donating and rendering gratuitously a substantial portion of its services." (*Id*. at 9.)

**Issues**

On appeal, the District asserts that the trial court erred in concluding that Huston Properties satisfied the *HUP* test and the requirements set forth in

---

[5] The trial court made findings of fact, which are numbered separately and correspond to elements of the *HUP* test and Act 55. Thus, our citations are to the trial court opinion's pagination and not to numerical findings of fact.

Section 5 of Act 55, 10 P.S. § 375; that the property was precluded from a charitable tax exemption under Section 8812(b)(1)-(2) of the Consolidated County Assessment Law, 53 P.S. § 8812(b)(1)-(2); and that the record did not support the trial court's conclusion that Huston Properties was entitled to a 72% partial exemption on the Property. (Dist. Br. at 4-5.)

Of the issues raised in Huston Properties' cross-appeal, one remains in dispute: whether it was entitled to a full (100%) charitable exemption.

## Purely Public Charity: Pennsylvania Constitution, Article VIII, Section 2(a)(v) and Section 5 of Act 55

To qualify for a charitable exemption from local taxes, an entity must prove that it is a purely public charity within the meaning of the term in article VIII, section 2(a)(v)[6] of the Pennsylvania Constitution. In *HUP*, our Supreme Court established a five-prong test, holding that an entity qualifies as an institution of purely public charity for constitutional purposes if it meets the following requirements:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

---

[6] Article VIII, section 2(a)(v) of the Pennsylvania Constitution provides as follows:

The General Assembly may by law exempt from taxation:

. . . .

(v) Institutions of *purely public charity*, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.

Pa. Const. art. VIII, § 2(a)(v) (emphasis supplied).

6

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*HUP*, 487 A.2d at 1317. The seeker of the exemption must establish each of these elements. *Camp Hachshara Moshava of N.Y. v. Wayne Cnty. Bd. for the Assessment and Revision of Taxes*, 47 A.3d 1271, 1275 (Pa. Cmwlth. 2012). Whether an entity qualifies as a "purely public charity" under the *HUP* test "is a mixed question of law and fact . . . ." *Fayette Res., Inc. v. Fayette Cnty. Bd. of Assessment Appeals*, 107 A.3d 839, 845 (Pa. Cmwlth. 2014).

Once an entity has satisfied the constitutional minimum of the *HUP* test, it must then also show that it meets the statutory requirements of Section 5 of Act 55. *Id.* Those requirements generally correspond to the requirements of the *HUP* test and are set forth in the discussion below. The parties dispute whether Huston Properties met the first four elements of the *HUP* test and corresponding requirements of Section 5 of Act 55, 10 P.S. § 575. As these issues overlap, we address them together.

### *Advancement of a Charitable Purpose*

With regard to the first *HUP* prong, the term "charitable" includes:

[E]very gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood to refer to something done or given for the benefit of our fellows or the public.

7

*HUP*, 487 A.2d at 1315 (extraneous punctuation omitted) [quoting *Hill Sch. Tax Exemption Case*, 87 A.2d 259, 262 (Pa. 1952)].

Section 5(b) of Act 55 provides that the criterion of "advanc[ing] a charitable purpose" is satisfied if an institution is organized and operated "primarily to fulfill any one or combination" of enumerated purposes, including "[a]ccomplishment of a purpose . . . recognized as important and beneficial to the public and which advances social, moral or physical objectives." 10 P.S. § 375(b)(6).

The District contends that the actual purpose of Huston Properties is to generate income for the Trust as an unrelated business entity. This assertion is contrary to the trial court's finding of fact on the point, which finding is supported by ample evidence. The District's argument is belied by the deed restrictions placed upon the Property, that it be used only as an office building and for purposes consistent with the preservation and conservation of the Property as a historic structure, as well as by the fact that the Property has consistently been operated at a loss, with subsidization of shortfalls by the Trust. The trial court, as fact finder in a tax assessment appeal, has within its province all matters of credibility and evidentiary weight. *The Lutheran Home at Topton, Pa. v. Schuylkill Cnty. Bd. of Assessment Appeals*, 782 A.2d 1, 6 (Pa. Cmwlth. 2001).

The District further contends that the preservation of the Property as a historic resource does not constitute advancement of a charitable purpose under the *HUP* test.[7] However, as pointed out by Huston Properties, the preservation of

---

[7] The cases cited on this issue by the District do not deal with the meaning of advancement of a charitable purpose. It was stipulated by the appealing taxing authority that that prong of the *HUP* test was met in *Unionville-Chadds Ford School District v. Chester County Board of Assessment* **(Footnote continued on next page…)**

8

"historic and esthetic values" of the environment is a right enshrined by the Environmental Rights Amendment (ERA) to the Pennsylvania Constitution. Pa. Const. art. I, § 27. It is a matter of express public policy that such values include the "architectural . . . and cultural heritage" of the Commonwealth. Section 102 of the History Code, 37 Pa.C.S. § 102. We believe that a function consistent with the purposes of the ERA as elaborated by the History Code is a purpose recognized as important and beneficial to the public and advances educational, moral, and social objectives. Given the policies embodied by the ERA and the History Code, that preservation of historical and aesthetic values are not merely laudable goals but rights enjoyed by the citizens of the Commonwealth, we agree that the trial court did not err in concluding that preservation of a historic resource constitutes advancement of a charitable purpose.

Given the rights established by the ERA and Section 102 of the History Code, we believe that the preservation and maintenance of a historic structure and property qualifies as a charitable purpose and the fashion in which the building is operated by Huston Properties is such a use.

---

*Appeals (Appeal of Longwood Gardens)*, 714 A.2d 397, 399, n.2 (Pa. 1998). *In re: Salem Crossroads Historical Restoration Society*, 526 A.2d 1257 (Pa. Cmwlth. 1987), dealt with the fourth prong of the *HUP* test: "[s]pecifically, we do not think that the Society's goals can be viewed as 'relieving the government of some of its burden.'" *Id.* at 1259.

At all events, the District argues that there is "no comparison between Longwood Gardens and Huston Properties" (Dist. Br. at 21), given the former's world-renowned public gardens, walking trails and watershed areas, education and research programs, financial and non-financial contributions to the community, and hundreds of annual events open to guests for the price of admission. Nowhere in *Appeal of Longwood Gardens* is it suggested that only organizations with the scale and scope of Longwood Gardens may qualify as purely public charities.

9

*Gratuitous Service*

The second prong of the *HUP* test requires an institution to establish that it "[d]onates or renders gratuitously a substantial portion of its services." *HUP*, 487 A.2d at 1317. The District argues that Huston Properties does not meet the second prong of the *HUP* test because "the record is void of any evidence or testimony indicating that the public or non-profit tenants cannot afford to pay their rents or that Huston Properties engages in any purported charitable activities." (Dist. Br. at 28.) The District cites *Fellowship International Mission v. Lehigh County Board of Assessment Appeals*, 690 A.2d 1271, 1274 (Pa. Cmwlth. 1997), for the proposition that the second prong of the *HUP* test requires a showing of "a bona fide effort to service those persons unable to afford the usual fee. In other words, it must be shown that it provides services to someone who cannot afford to pay." From this, the District reasons that Huston was required to show that its tenants are unable to pay rent. While this argument would seem to relate more to the third prong of *HUP* (whether the beneficiaries of the service are legitimate subjects of charity) rather than whether the service is rendered gratuitously, it lacks merit in either case.

The trial court found that the charitable function of Huston Properties is the preservation and maintenance of a historic structure, not the subsidizing of tenants' rent. To the extent that Huston Properties has had income, it has consistently been exceeded by the costs of preservation and maintenance, which are subsidized by the Trust, so clearly this service to the community is rendered gratuitously.

Section 5(d)(1) of Act 55 requires that an institution must donate or render gratuitously a substantial portion of its services, which requirement may be met by provision of, *inter alia*, "goods and services." 10 P.S. § 375(d)(1). Section

10

5(d)(1) sets forth several measures for this criterion. The District argues that Section 5(d) contemplates "some *tangible and quantifiable* 'goods and services' be provided so that a calculation can be made as to whether a substantial portion of those goods and services have been donated or gratuitously rendered." [Dist. Br. at 37 (emphasis supplied).] The District disputes that the "existence and maintenance of a historic[] property provides some incalculable benefit to the citizenry at large." (*Id.*) The law does not impose a requirement that a service be "tangible" in order for it to qualify under Act 55. Section 3 of Act 55 only defines the phrase "goods and services" in terms of function and value. We have already found that the preservation of the Property advances a charitable purpose that is covered by Section 5(b) of Act 55 and further conclude that preservation and maintenance of a historic structure constitutes "services" for purposes of Act 55.[8]

### *Legitimate Subjects of Charity*

The third prong of the *HUP* test requires that a public charity benefit a substantial and indefinite class of persons who are legitimate subjects of charity. *Mars Area Sch. Dist. v. United Presbyterian Women's Ass'n of N. Am.*, 693 A.2d 1002, 1007 (Pa. Cmwlth. 1997). Section 5(e) of Act 55 provides that the institution in question must "benefit a substantial and indefinite class of persons who are legitimate subjects of charity." 10 P.S. § 375(e)(1). With respect to Section 5(e) of Act 55, "[l]egitimate subjects of charity" are defined as "[t]hose individuals who are unable to provide themselves with what the institution provides for them" and

---

[8] The District does not argue that the value of the preservation and maintenance services provided by Huston Properties relative to income or expenses would be insufficient under Section 5(d)(1) of Act 55 nor would such an argument have merit, since all of Huston's income is consumed in providing this service.

11

"[s]ubstantial and indefinite class of persons" is defined in pertinent part as "[p]ersons not predetermined in number." 10 P.S. § 375(e)(2).

The District asserts that the trial court erred in finding that these standards were met because of (1) a lack of evidence that Huston's tenants are legitimate subjects of charity, and (2) "[t]here was no evidence at trial indicating that the Property was open to the community." (Dist. Br. at 28.) The District argues that for a property to qualify under this prong of the *HUP* test, it must be open to the public. The District also distinguishes the Property from an institution like Longwood Gardens, "a unique resource that virtually no individual could afford to maintain on his or her own . . . comparable to a public library, museum, or art gallery." [Dist. Br. at 26 (quoting *Appeal of Longwood Gardens*, 714 A.2d at 400).]

On the contrary, our Supreme Court has not made public entry into a building a litmus test, but rather requires that the benefit be available to the public at large. Further, Huston's preservation and maintenance activities are a resource to the general public that, like Longwood Gardens, would not be within the means of a private individual. The trial court found that the maintenance and preservation of the Property would not be within the resources of the general public. (Trial Ct. Op. at 10.) As stated by our Supreme Court, "an essential feature of public charity 'is that it is not confined to privileged individuals[] but is open to the indefinite public. It is this *indefinite* or unrestricted quality that gives it its public character.'" *Appeal of Longwood Gardens*, 714 A.2d at 401 [quoting *Donohugh's Appeal*, 86 Pa. 306, 313 (1878) (emphasis supplied)]; *compare Sacred Heart Healthcare Sys. v. Commonwealth*, 673 A.2d 1021 (Pa. Cmwlth. 1996) (provision of management services to only a small group of affiliated corporations and not to the general public or any segment thereof is not a charitable purpose).

12

We agree with the trial court that the beneficiaries of Huston Properties'
activities of preservation and conservation include the public at large, which enjoys
a historic resource it would otherwise lack. The Property is accessible to members
of the general public through a museum operated on site and a community band, and
its historic and architectural features can be viewed and appreciated. We believe
this adequately establishes that the Property is an accessible benefit to the general
public for purposes of the *HUP* test and Section 5(e) of Act 55.

### *Relief of a Government Burden*

To satisfy the fourth prong of the *HUP* test, an institution must relieve
the government of some burden. Section 5(f) of Act 55 provides in relevant part as
follows:

> (f) Government service.--The institution must relieve the
> government of some of its burden. This criterion is
> satisfied if the institution meets any one of the following:
>
> (1) Provides a service to the public that the
> government would otherwise be obliged to fund or to
> provide directly or indirectly or to assure that a similar
> institution exists to provide the service.
>
> (2) Provides services in furtherance of its charitable
> purpose which are either the responsibility of the
> government by law or which historically have been
> assumed or offered or funded by the government.
>
> . . . .
>
> (4) Provides a service to the public which directly
> or indirectly reduces dependence on government programs
> or relieves or lessens the burden borne by government for
> the advancement of social, moral, educational or physical
> objectives.

10 P.S. § 375(f)(1)(2) and (4).

The District contends that "[t]here is no precedent for the argument that the government has the burden to maintain or preserve a privately owned commercial office building, even if the building is designated as historically significant." (Dist. Br. at 24.) We disagree that the charitable endeavor must relieve the government of some *mandatory* obligation. In *Appeal of Longwood Gardens*, our Supreme Court stated as follows regarding the nature of the relief of a government burden prong:

> Whenever the government provides services and facilities to its citizens, it bears certain burdens. *Such burdens exist regardless of whether the governmental endeavor is obligatory or discretionary in origin.* If services and facilities provided by government experience reduced demands due to the existence of independent institutions that meet the same needs, then it can fairly be said that the government's burden has been eased.

*Appeal of Longwood Gardens*, 714 A.2d at 400 (emphasis supplied).

Nonetheless, we agree with Huston Properties and the trial court that the preservation and maintenance of historic structures is a burden that the Commonwealth has taken on and, indeed, a duty of government. The ERA establishes that the people of the Commonwealth have a right to the "preservation of the natural, scenic, historic and esthetic values of the environment" and imposes on the Commonwealth a duty to conserve and maintain them. Pa. Const. art. I, § 27. Further, Section 102 of the History Code includes a specific statement of legislative policy that historical preservation is a duty vested in the Pennsylvania Historical and Museum Commission. 37 Pa.C.S. § 102.[9] More concretely, the state government

---

[9] The legislative statement provides, in pertinent part:
**(Footnote continued on next page…)**

14

has assumed some of the burden for funding historic preservation. Section 104 of the History Code provides that

> [t]he money collected by the [Historical and Museum] [C]ommission from all fees, sales and other activities shall be paid into the State Treasury through the Department of Revenue and credited to the Historical Preservation Fund. Collections shall include the proceeds from the sale of

---

> It is hereby determined and declared as a matter of legislative finding and policy that:
>
> (1) [The ERA] makes the Commonwealth trustee for the preservation of the historic values of the environment.
>
> (2) The conservation of Pennsylvania's historic . . . heritage and the preservation . . . objects of historic interest, and the identification, restoration and preservation of architecturally and historically significant sites and structures are duties vested primarily in the Pennsylvania Historical and Museum Commission.
>
> (3) The irreplaceable historical, architectural, archaeological and cultural heritage of this Commonwealth should be preserved and protected for the benefit of all the people, including future generations.
>
> (4) The preservation and protection of historic resources in this Commonwealth promotes the public health, prosperity and general welfare.
>
> (5) The rapid social and economic development of our contemporary society threatens to destroy the remaining vestiges of our historic heritage.
>
> (6) It is in the public interest for the Commonwealth, its citizens and its political subdivisions to engage in comprehensive programs of historic preservation for the enjoyment, education and inspiration of all the people, including future generations.

37 Pa.C.S. § 102 (relating to declaration of policy).

historic properties. The money in the fund may be used by the [C]ommission and is hereby appropriated to it in exercising its powers and performing its duties as set forth in this title.

37 Pa.C.S. § 104(h). Section 502 of the History Code provides that the Pennsylvania Historical and Museum Commission

> ha[s] the power and duty to:
>
> (5) Undertake the activities necessary to qualify the Commonwealth for participation in programs and sources of Federal assistance for purposes of historic preservation.
> . . . .
>
> (8) Provide technical and financial assistance to public officials, private individuals and organizations engaged in historic preservation activities.
>
> . . . .
>
> (11) Solicit, receive and utilize funds from any public or private source for purposes of historic preservation.
>
> (12) Acquire easements in properties of historic, architectural and archaeological significance by gift, purchase, devise or any other lawful transfer when acquisition is necessary for the preservation thereof.
>
> (13) Rent or lease historic resources and associated properties for purposes of historic preservation.
>
> (14) Contract with other states, public officials in this Commonwealth or private individuals and organizations for purposes of historic preservation.

37 Pa.C.S. § 502(5), (8), and (11)-(14).[10]  The Historical and Museum Commission administers a grant program, which funds "nonprofit organizations and local governments for small construction projects for publicly accessible historic resources."[11]   The Department of Community and Economic Development administers a tax credit program for taxpayers engaging in historic preservation.[12]

In the recent case of *Ceramic Art & Culture Institute v. Berks County Board of Assessment Appeals*, 227 A.3d 46, 59 (Pa. Cmwlth. 2020), this Court rejected a taxing authority's "narrow understanding" of the government burden factor, stating that it is enough for an organization to relieve a more general assumed government burden of fostering the arts, without respect to a particularized obligation to teach ceramics.  In light of the values set forth in the ERA, as expanded upon by the History Code, and in light of the funding for historical preservation provided by state government, historic preservation is indeed a burden that the government has assumed.  Thus, we conclude that the trial court did not err in finding that Huston Properties relieves the government of some of its burden.

The District also argues that the trial court erred in finding that Huston Properties' activities relieved the government of a burden as required by Section 5(f) because of the reasons set forth *supra* with respect to the fourth prong of the *HUP* test and because Huston Properties "provided no evidence . . . that the government

---

[10] *See also* Section 2802-A of art. XXVIII-A of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, added by Section 2 of the Act of June 28, 1951, P.L. 204, 71 P.S. § 717 (relating to Historical Preservation Fund).

[11] https://www.phmc.pa.gov/Preservation/Grants-Funding/Pages/Construction-Projects.aspx (last visited on August 18, 2022).

[12] *See* https://dced.pa.gov/programs/historic-preservation-tax-credit-hptc/ (last visited on August 18, 2022).

17

has traditionally assumed responsibility for the preservation of historically significant, privately-operated, commercial office buildings." (Dist. Br. at 34.)

This argument is unavailing for the reasons stated above regarding the *HUP* test. The burden that a charity relieves need not be a statutorily or constitutionally mandated government responsibility. *See Ceramic Art & Culture Inst.*, 227 A.3d 46; *Pocono Cmty. Theater v. Monroe Cnty. Bd. of Assessment Appeals*, 142 A.3d 110, 116 (Pa. Cmwlth. 2016). It need only be within the "scope of burdens that are routinely shouldered by government." *Appeal of Longwood Gardens*, 714 A.2d at 401. In the instant case, the trial court concluded as follows:

> Governments have no mandatory obligation to maintain historic structures or keep land open. Nevertheless most governments choose to do so and public support for such efforts is clear. Therefore, by preserving and maintaining this historic structure, Huston [Properties] relieves the City of Coatesville, the County of Chester, and the Commonwealth of Pennsylvania from some of the burden that would otherwise fall on one or more of these entities.

(Trial Ct. Op. at 5-6.) We agree. The Commonwealth has enacted funding of historic preservation into law through the History Code and funds said programs with the public fisc. Huston Properties' services relieve the government of some of the burden it has assumed.

## Consolidated County Assessment Law

The District next argues that the trial court erred[13] in granting Huston Properties a partial exemption because Section 8812(b)(1) and (2) of the

---

[13] As noted, the trial court did not make findings of fact or conclusions of law with respect to issues surrounding the Consolidated County Assessment Law as we had directed when we **(Footnote continued on next page…)**

18

Consolidated County Assessment Law precludes exemption of the Property from real estate taxes where Huston Properties (1) realizes income from the Property and (2) does not demonstrate significant occupancy and continuing use of the Property.[14] (Dist. Br. at 38.)

Section 8812(b) of the Consolidated County Assessment Law provides for exceptions to Subsection (a), which state in pertinent part as follows:

**(b) Exceptions.--**

(1) Except as otherwise provided . . . , all property, real or personal, other than that which is actually and regularly used and occupied for the purposes specified in

---

remanded the matter. However, neither party has raised this as an issue and we believe the matter may be decided on its merits based upon the record before us.

[14] Huston Properties contends that the District failed to preserve any issue relating to Section 8812(a) because it did not raise such issues in its statement under Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b). The District's statement of errors complained of on appeal states:

The [t]rial court erred as the Property owned by [Huston Properties] does not fall within the exemption provided at 53 Pa.C.S. § 8812 because [Huston Properties] failed to establish that it is a purely public charity and that the premises were not the source "from which any income or revenue is derived" [] by the Lessor [Huston Properties], that any rent paid is purely nominal, and that the Lessees were the recipients of the Lessor's charity.[] *See* [] *Appeal of Archdiocese of Philadelphia*, 617 A.2d 821 (Pa. Cmwlth. 1992).

(Dist. Concise Statement of Errors Complained of on Appeal ¶ 4, Suppl. R.R. at 1122a.)

The District responds in its reply brief that its statement was sufficient to preserve the issue under Pa.R.A.P. 1925(b)(4)(v), in that "all issues raised in the Statement will be deemed to include every subsidiary issue contained herein which was raised in the trial court." As the District's arguments are focused on the exceptions under Section 8812(b)(1)-(2) rather than Huston Properties' eligibility for an exemption under Section 8812(a), we deem the issue raised with sufficient specificity.

19

this section, and all property from which any income or revenue is derived, *other than from recipients of the bounty of the institution or charity*, shall be subject to taxation, except where exempted by law for State purposes.

(2) Except as otherwise provided . . . , all property, real and personal, *actually and regularly used and occupied for the purposes specified* in this section shall be subject to taxation unless the person or persons, associations or corporation so using and occupying the property shall be seized of the legal or equitable title in the realty and possessor of the personal property absolutely.

53 Pa.C.S. § 8812(b)(1)-(2) (emphasis supplied).

With respect to Section 8812(b)(1), we believe that our decision in *Borough of Homestead v. St. Mary Magdalen Church*, 798 A.2d 823 (Pa. Cmwlth. 2002), is controlling. In *Borough of Homestead*, we addressed whether a building should be exempt from real estate taxation where a purely public charity (the Diocese of Pittsburgh) converted a school building into an office building in which it maintained an office and leased the rest of the space to for-profit and non-profit entities in furtherance of the overall objective of helping the unemployed and generating new business for the local economy. The for-profit entities occupied 16% of the space while non-profits occupied 79% of the space, and the Diocese allowed various local groups and government units to utilize the space at no cost. The building never generated a profit and operated at a deficit while subsidized by the charity.

In determining whether the tenants in *Borough of Homestead* were the recipients of the owner's charity, we considered the Diocese's responsibilities for maintenance of the building and the Diocese's never having derived net income or surplus revenue but requiring that the operation be subsidized for substantial losses.

20

We concluded that the licensees received the bounty of the Diocese based on the subsidy. Moreover, the intended beneficiary of the charity, the community, was served because the Diocese utilized the licensees to fulfill the charity's mission of serving the community.

Like the Diocese in *Borough of Homestead*, Huston Properties has utilized the Property by leasing space to for-profit and non-profit entities for funds that aid in, but are insufficient to cover, the costs related to maintaining and conserving the Property. As in *Borough of Homestead*, the Property has operated at a substantial loss that is subsidized by Huston Properties' parent, the Trust. Huston Properties provides heat, electricity, ventilation, air conditioning, basic janitorial services, repairs, and exterior maintenance to all of its tenants.[15] As the tenants in this case benefit Huston Properties' mission of preserving and maintaining the Property, we conclude that the exception in Section 8812(b)(1) does not apply.

Likewise, we find the exception provided in Section 8812(b)(2) inapplicable, as the evidence of record indicates that Huston Properties maintains its office in the Building. (N.T. at 49, R.R. at 63a.)

**Percentage of Property Exempt from Taxation**

In addition to asserting that Huston Properties is not entitled to any exemption, the District contends as its fifth issue that the trial court erred by not

_____

[15] The District cites *Appeal of the Archdiocese of Philadelphia*, for the proposition that receipt of any income disqualifies Huston Properties from a tax exemption under Section 8812(b)(1). That case is readily distinguishable, in that the leases contained a laundry list of benefits to the lessor such that it was "difficult to envision a cost to [l]essor that is not either to be paid directly by [l]essee or reimbursed as additional rent." 617 A.2d at 824. Here, while Huston receives revenue from the rentals, it does not actually derive income, since its revenue and expenses result in a net deficit.

providing a basis for its conclusion that the Property was entitled to a 72% exemption. Conversely, Huston Properties asserts that it is entitled to a 100% exemption. We address these arguments together.

In *Alliance Home of Carlisle v. Board of Assessment Appeals*, 919 A.2d 206 (Pa. 2007), a property generated income through leasing units to tenants. The Supreme Court found that because the income-producing portion of the property subsidized the charitable component, the entire property qualified as a purely public charity exempt from real estate taxation. Likewise, this Court has found that where space is leased to both for-profit entities and non-profits, to further the purpose of a purely public charity, the entire property may be tax exempt. *See Borough of Homestead*, 798 A.2d at 826. The rents Huston Properties receives are used to support the charitable purpose of preserving and maintaining the Property by offsetting some of the expense to maintain it, and the Property is operated at a deficit. Because the proceeds of leases will be used to further the charitable purpose of maintaining and preserving the Property, a 100% exemption is appropriate. Accordingly, we need not address the method of computation of a 72% exemption.

## Conclusion

In light of the foregoing, we affirm in part and reverse in part. We affirm that an exemption is in order but reverse with respect to the trial court's finding that a 72% exemption is appropriate, and direct that the Property be 100% exempt from taxation.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of the Coatesville Area   :
School District From the Decision of the   :
Chester County Board of Assessment   :        No. 1130 C.D. 2018
Appeals for the Property Located at   :
50 South First Avenue, City of Coatesville,   :
Chester County, Pennsylvania Property   :
Tax Parcel No. 16-05-0229.0000   :
  :
Appeal of: Coatesville Area School District   :


In Re: Appeal of the Coatesville Area   :
School District from the Decision of The   :
Chester County Board of Assessment   :        No. 1161 C.D. 2018
Appeals for Property Located at 50 S. First   :
Avenue, Coatesville, Chester County   :
Pennsylvania   :
  :
Tax Parcel No. 16-05-00229.0000   :
  :
Appeal of:  Huston Properties, Inc.   :


# O R D E R

AND NOW, this 19th day of August, 2022, the order of the Court of Common Pleas of Chester County is AFFIRMED IN PART and REVERSED IN PART.  It is ORDERED that the assessment for the real property known as 50 South First Avenue, Parcel No. 16-06-0229.0000, for the tax years 2014 and 2015 is $0.00. Said assessment will remain in future tax years unless and until the same is changed as otherwise provided for by law.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita